**F I L E D**

**PUBLISH**

**June 29, 2005**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: ROBERT ALDERETE and
LINDA D. ALDERETE

     Debtors.

---

ROBERT ALDERETE; LINDA D.
ALDERETE,

     Plaintiffs - Appellees,

   v.

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,

     Defendant - Appellant.

U.S. DEPARTMENT OF
EDUCATION; COLORADO
STUDENT LOAN PROGRAM FOR
STATE OF COLORADO,

     Defendants - Appellees,

   and

OSI COLLECTION SERVICE;
EDUCATION LOAN SERVICE
CENTER; STATE OF COLORADO;
WHINDAM PROFESSIONALS,

     Defendants.

No. 04-2109

**APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO
(Bankr. Ct. No. 7-98-16943 )**

Daniel Fisher, Educational Credit Management Corporation, St. Paul, Minnesota, (Troy Gunderman, Educational Credit Management Corporation, St. Paul, Minnesota, Scott M. Browning and Craig R. Welling, Rothgerber Johnson & Lyons, LLP, Denver, Colorado, with hin on the briefs, appearing for Appellant.

George M. Moore, Moore & Berkson, P.C., Albuquerque, New Mexico, appearing for Appellees.

Before **TACHA**, Chief Circuit Judge, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

**TACHA**, Chief Circuit Judge.

Plaintiffs-Appellees Robert and Linda Alderete filed for Chapter 7 bankruptcy and sought to discharge their student loans. The Bankruptcy Court found that these loans did not impose an "undue hardship" as required by 11 U.S.C. § 523(a)(8) but nonetheless granted a partial discharge of these loans. Defendant-Appellant Educational Credit Management Corp. ("ECMC") appealed this decision to the United States Bankruptcy Appellate Panel for the Tenth Circuit ("BAP"). The BAP held that the Bankruptcy Court erred in not finding that an "undue hardship" existed and affirmed the partial discharge on the ground that the court would have had discretion to order a partial discharge had it

properly found undue hardship. Because we conclude that the Bankruptcy Court properly determined that no undue hardship exists, and that the court cannot grant any discharge without making such a finding, we take jurisdiction under 28 U.S.C. § 1291, REVERSE, and REMAND with instructions to reinstate the full amount of the debt.

## I. BACKGROUND

The Alderetes met and married while attending the Colorado Institute of Art. Both Mr. and Ms. Alderete received associate degrees in visual communications from the school and financed their education by taking student loans. They now live in Albuquerque, New Mexico, with their three children.

Although both Mr. and Ms. Alderete are employed, neither has a job utilizing their visual communications degree. Mr. Alderete does landscape maintenance and earns $8.50 per hour. The Bankruptcy Court found that Mr. Alderete has neither looked for employment in the visual arts field nor has he sought higher paying employment opportunities in the landscaping business. Ms. Alderete works as an educational assistant in a kindergarten class for the Albuquerque Public Schools during the school year and does not work during the summer. The Bankruptcy Court found that Ms. Alderete cannot advance within the public school system without going back to college.

When the Alderetes filed for bankruptcy, their student loans, including

interest and collection costs, totaled nearly $78,000. This amount represented over 98% of their total unsecured debt. The Alderetes then initiated the instant adversarial proceeding seeking to discharge these loans on the ground that they created an "undue hardship," and therefore the debt should be discharged under § 523 of the Bankruptcy Code. *See* 11 U.S.C. § 523(a)(8).

The Bankruptcy Court held a trial on this issue and found that the Alderetes failed to establish that the loans created an undue hardship. Despite this finding, the court used its equitable power to discharge a portion of the loans. Specifically, the Bankruptcy Court discharged the interest and fee associated with the loans and required only the principal to be repaid. ECMC appealed this partial discharge to the BAP.

The BAP affirmed the partial discharge; however, it did not determine that the Bankruptcy Court had the power to order a discharge in the absence of a finding of undue hardship. Instead, the BAP held that the Bankruptcy Court erred in finding that an undue hardship did not exist, and had the court properly determined that hardship existed, it would have had the authority to issue the partial discharge. ECMC timely appeals this ruling, arguing that the Bankruptcy Court correctly found that no undue hardship exists, and in the absence of a hardship finding, the Bankruptcy Court lacks the power to grant a partial discharge.

## II. DISCUSSION

A.    Undue Hardship

1. *Standard of Review* .

Although this appeal is from a decision by the BAP, we review only the Bankruptcy Court's decision.    *See In re Albrecht* , 233 F.3d 1258, 1260 (10th Cir. 2000) ("In our review of BAP decisions, we independently review the bankruptcy court decision."). We accept the Bankruptcy Court's factual findings unless they are clearly erroneous.    *Educational Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1305 (10th Cir. 2004). "Whether a debtor's student loans would impose an 'undue hardship' under 11 U.S.C. § 523(a)(8) is a question of law. It requires a conclusion regarding the legal effect of the bankruptcy court's findings as to the debtor's circumstances, and is therefore reviewed de novo."    *See id*. (internal citations omitted). Because none of the bankruptcy court's factual findings are contested on appeal, we simply review de novo whether the facts support a finding that an undue hardship does not exist.

2. *Merits*

Section 523 of the Bankruptcy Code limits a debtor's ability to discharge federal student loans. Section 523 states:

(a) A discharge under [the Bankruptcy Code] does not discharge an individual debtor from any debt—

(8) for an educational benefit overpayment or loan made,

-5-

> insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, *unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents*;

11 U.S.C. § 523(a)(8) (emphasis added). Thus, the Bankruptcy Code permits discharge of student loans only when failure to discharge this debt would "impose an undue hardship on the debtor."

When the Bankruptcy Court decided this case, this Court had not adopted a definition of "undue hardship" under § 523. The Bankruptcy Court considered the tests adopted by other circuits and chose to apply the three-part test developed by the Second Circuit in *Brunner v. New York State Higher Educational Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987). This Court has since considered this question and adopted the *Brunner* test as well. *See Polleys*, 356 F.3d at 1309 ("We therefore join the majority of the other circuits in adopting the *Brunner* framework.").

The Alderetes argue that this case should be remanded to the Bankruptcy Court for reconsideration in light of *Polleys*. Although *Polleys* clarified what is required to satisfy the *Brunner* test, the Bankruptcy Court applied the correct test and made factual findings on all three prongs of the *Brunner* test. Because the Bankruptcy Court applied the correct test, we have a sufficient record to

-6-

determine whether the Bankruptcy Court erred in concluding that an undue hardship had not been established and do not need to remand for reconsideration in light of *Polleys*.

In *Polleys*, we held that under the *Brunner* test in order to establish an undue hardship a debtor must prove:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans;
>
> (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and
>
> (3) that the debtor has made good faith efforts to repay the loans.
>
> Under the *Brunner* analysis, if the court finds against the debtor on any of the three parts, the inquiry ends and the student loan is not dischargeable.

*Id.* at 1307 (internal citation omitted).

The Bankruptcy Court found that the first prong was satisfied, and ECMC does not contest this finding on appeal. The Bankruptcy Court, however, found that the Alderetes had failed to meet either the second or the third prongs. The Alderetes argue that the Bankruptcy Court erred on both of these findings. We disagree.

The second prong of the *Brunner* test considers whether there are other circumstances making it likely that the debtor will not be able to pay his loans for

a significant portion of the repayment period. The reason for this requirement is simple: A recent graduate's salary might be so low that it is difficult to pay the loans now, but it is clear that his salary will increase in the future and therefore his loans should not be discharged.

In *Polleys*, we clarified how a court should decide if the second prong is met. In order to decide whether "additional circumstances" exist, "a realistic look must be made into [the] debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like." *Id.* We further noted that "courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism, and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan." *Id.* (internal quotation marks omitted). We now consider whether the Bankruptcy Court in this case took a "realistic look" and based its findings on "specific articulable facts."

The Bankruptcy Court made numerous factual findings to support its conclusion that the second prong has not been satisfied. The court found:

> In this case, Plaintiffs are relatively young and have no health conditions that impede their ability to work. As their children reach the age of majority, Plaintiffs will have less strain on their family budget. The Court cannot find that their ability to earn better pay in the future is limited by their current circumstances. Plaintiffs have made no real effort to search for better-paying or additional employment. Nor do the Plaintiffs currently face any additional "exceptional circumstances," such as illness, recent disability, or an

-8-

exceptionally large number of dependants, that would hamper their ability to repay the loans.

*In re Alderete*, 289 B.R. 410, 418 (Bankr. D. N.M. 2002).

Because these findings are not disputed on appeal, we accept them as true and review only whether they provide a sufficient basis to conclude that the second prong is not met. We hold that, based on these factual findings, the Bankruptcy Court correctly determined that the second prong of the *Brunner* test was not met. Further, by listing these factors, the Bankruptcy Court provided "specific articulable facts" that support this conclusion.

Even if the Alderetes could meet the second prong of the *Brunner* test, they have not proven that they meet the third part of the *Brunner* test, which requires debtors to show they have made good-faith efforts to repay the loans, as is their burden. In *Polleys*, we cautioned that the good-faith requirement "should not be used as a means for courts to impose their own values on a debtor's life choices." 356 F.3d at 1310. We further explained that this inquiry "should focus on questions surrounding the legitimacy of the basis for seeking a discharge. For instance, a debtor who willfully contrives a hardship in order to discharge student loans should be deemed to be acting in bad faith." *Id.* In addition, we placed weight on the steps taken by the debtor prior to filing for bankruptcy in determining whether the debtor was acting in good faith. We held that the debtor's "efforts to cooperate with her lenders show that she was acting in good

faith in working out a repayment plan." *Id*. at 1312.

In this case, the Bankruptcy Court considered these factors and concluded that the Alderetes had not made a good-faith effort to repay their student loans. The court first noted that the Alderetes had only made minimal payments on the loans and that the loans accounted for 98% of the total debt to be discharged. While the court recognized that these factors were not determinative of the good-faith inquiry, it considered them relevant to its analysis. The Bankruptcy Court went on to place significant weight on the fact that the Alderetes did not consider applying for the Income Contingent Repayment ("ICR") Plan offered by the Ford Program, which would have greatly reduced their monthly loan payments, until after the adversary proceeding was filed. *In re Alderete*, 289 B.R. at 420.[1] The Bankruptcy Court recognized that participation in a repayment program is not required to satisfy the good-faith prong of the *Brunner* test. The court, however, considered this factor "'an important indicator of good faith.'" *Id.* at 419 (quoting *In re Wallace*, 259 B.R. 170, 185 (C.D. Cal. 2000)).

---

[1]On appeal, the Alderetes argue that the Bankruptcy Court should not have considered this factor because there was no evidence that they were even eligible for the Ford Program. The Bankruptcy Court, however, was only considering this for the purpose of determining whether a good-faith effort had been made to repay the loans—the court did not claim that the Alderetes must participate in the program. If the Alderetes had inquired into the Ford Program and found out they were not eligible, the court may well have treated this as evidence establishing good faith.

We agree with the Bankruptcy Court on this score. The Alderetes—who had made only minimal payments on their student loans, had almost no debt other than these loans, and failed to consider alternate repayment options prior to filing bankruptcy—have failed to show that they made a good-faith effort to repay their student loans. Because the Alderetes have not satisfied the second or third prongs of the *Brunner* test, they have failed to prove that requiring them to repay their student loans would create an undue hardship.

B.      Partial Discharge

Despite finding that the Alderetes had not established that their student loans create an undue hardship, the Bankruptcy Court granted a partial discharge. Because we agree with the Bankruptcy Court that no undue hardship exists, we hold that the Bankruptcy Court lacked the power to grant a partial discharge.

Section 105(a) of the Bankruptcy Code establishes the equitable powers of the bankruptcy court. This provision states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Based on this provision, a number of bankruptcy courts have determined that they possess the power to grant a partial discharge of student loan debts even in the absence of an undue hardship. *See, e.g.*, *In re Brown*, 18 B.R. 219, 224 (Bankr. D. Kan. 1982) (holding, despite not finding undue hardship, "that it would be equitable to reduce the amount of

-11-

nondischargeable liability by the amount of the accrued interest"); *In re Albert*, 25 B.R. 98, 102 (Bankr. D. Ohio 1982) ("An increasing number of cases have indicated that although the facts presented do not require a finding of undue hardship, the Court can reduce the amount owed or revise the payment schedule."). The Bankruptcy Court relied on cases adopting this reasoning in granting the Alderetes a partial discharge.

Although this Court has never addressed this issue, we note that our sister circuits have unanimously rejected this proposition. *See In re Miller*, 377 F.3d 616, 622 (6th Cir. 2004); *In re Cox*, 338 F.3d 1238, 1243 (11th Cir. 2003); *In re Saxman*, 325 F.3d 1168, 1175 (9th Cir. 2003). Because § 105(a) only grants the power to "carry out the provisions" of the Bankruptcy Code, these courts have held that bankruptcy courts can only grant partial discharges when the terms of § 523(a)(8) have been met (i.e., that an undue hardship has been shown). *See, e.g., In re Saxman*, 325 F.3d at 1175 ("We therefore conclude that before the bankruptcy court can partially discharge student debt pursuant to § 105(a), it must first find that the portion being discharged satisfies the requirements under § 523(a)(8).").

We agree with our sister circuits that a bankruptcy court cannot exercise its § 105(a) powers to grant a partial discharge of student loans unless § 523(a)(8) has been satisfied. As the Eleventh Circuit noted, "To allow the bankruptcy

-12-

court, through principles of equity, to grant any more or less than what the clear language of § 523(a)(8) mandates would be tantamount to judicial legislation and is something that should be left to Congress, not the courts." *In re Cox,* 338 F.3d at 1243 (quotations omitted). Because the Bankruptcy Court found that no undue hardship existed, it lacked the power to grant a partial discharge, and thus erred in granting the Alderetes such relief.

### III. CONCLUSION

We hold that the Bankruptcy Court properly determined that the Alderetes have not established that their student loans create an "undue hardship." We further hold that, in the absence of an undue hardship finding, a bankruptcy court cannot order a partial discharge of student loans. We therefore REVERSE the Bankruptcy Court's partial discharge and REMAND for reinstatement of the student loan debt.