**PUBLISHED**

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

In Re: ROBERT J. MOSKO, JR.,
　　　　　　　　　　　　　*Debtor.*

---

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,
　　　　　　　　*Creditor-Appellant,*

　　　　v.

ROBERT J. MOSKO, JR.; BRENDA
RICHLEY MOSKO,
　　　　　　　*Debtors-Appellees,*　　　　　No. 06-2076

　　　　v.

BRUCE MAGERS, Trustee,
　　　　　　　　　　　　*Appellee.*

---

MICHAEL D. WEST, Bankruptcy
Administrator,
　　　　　　　　　　　　*Movant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Winston-Salem.
William L. Osteen, Senior District Judge;
Thomas W. Waldrep, Jr., Bankruptcy Judge.
(1:06-cv-00476-WLO; B-04-52834C-7W; A-04-06077-W)

Argued: September 28, 2007

Decided: February 12, 2008

Before TRAXLER and SHEDD, Circuit Judges,
and Norman K. MOON, United States District Judge
for the Western District of Virginia, sitting by designation.

Reversed by published opinion. Judge Shedd wrote the opinion, in which Judge Traxler and Judge Moon joined.

---

**COUNSEL**

Julie K. Swedback, EDUCATIONAL CREDIT MANAGEMENT CORPORATION, St. Paul, Minnesota, for Appellant. Robert Edmunds Price, Jr., Winston-Salem, North Carolina, for Appellees.

---

**OPINION**

SHEDD, Circuit Judge:

Robert and Brenda Mosko filed bankruptcy and sought to discharge their government-backed student loan debt pursuant to 11 U.S.C. § 523(a)(8). The bankruptcy court granted the Moskos relief from their student loans and the district court affirmed that order. Educational Credit Management Corporation ("ECMC") appeals and because we conclude that the bankruptcy court erred in discharging the Moskos' loans, we reverse.

I.

During their bankruptcy case, the Moskos filed an adversary proceeding to discharge their student loans on December 30, 2004. On September 1, 2005, the bankruptcy court held a hearing and found the following facts. The Moskos lived in Mocksville, North Carolina, with their four-year-old son. Robert's and Brenda's student loans as of July 15, 2005, equaled $63,417.06 and $57,156.41, respectively. Robert received student loans for a bachelor of science degree in information systems from the University of North Carolina at Greensboro ("UNC-G"). Brenda received student loans for a bachelor of arts degree from Old Dominion University and a master's degree in music from UNC-G.

In 2002, 2003, and 2004, the Moskos' adjusted gross income equaled $75,546, $78,363, and $64,130, respectively. At the time of

the bankruptcy court hearing, Brenda taught music at South Davie Middle School, where she earned approximately $38,000 annually. Robert worked at Wachovia Bank as a COBOL[1] programmer until Wachovia laid him off in August 2003. Thereafter, Robert briefly worked for a company contracting with Wachovia. He quit when that company informed him that he would receive his regular wage for overtime hours (instead of an overtime wage consisting of his regular wage multiplied by one-and-a-half). Then Robert worked at Lowe's until he was terminated.[2]

Lowe's terminated Robert because he suffers from excessive daytime sleepiness ("EDS"). He has severe obstructive sleep apnea, periodic limb movement, and chronic obstructive pulmonary disease, which all combine to cause EDS. Robert's EDS currently prevents him from driving, which limits his employment prospects.

After termination by Lowe's, Robert received unemployment benefits of approximately $420 per week until March 2005. During this time, Robert completed two computer related online courses at Davidson Community College which he testified might open possibilities of employment.

The bankruptcy court properly noted that it could discharge the Moskos' student loans only if repayment of those loans would constitute "an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). To determine whether the Moskos' repayment of their student loans would constitute an undue hardship, the bankruptcy court applied the three-part *Brunner* test adopted by this circuit. *In re Frushour*, 433 F.3d 393, 400 (4th Cir. 2005). The *Brunner* test requires the Moskos to establish, by a preponderance of the evidence, that (1) they cannot maintain, based on current income and expenses, a minimal standard of living for themselves and their dependent if forced to repay the loans; (2) additional circumstances exist indicating that this state of affairs is likely to persist for a signifi-

---

[1]COBOL stands for Common Business-Oriented Language, which is a programming language used for large mainframe computers operated by companies such as Wachovia and Bank of America.

[2]Although the record is unclear, the Moskos state in their brief that Lowe's employed Robert until August 2004. *See* Appellee Br. 4.

cant portion of the repayment period of their student loans; and (3) they have made good-faith efforts to repay their student loans. *See id.*

As to part one of the *Brunner* test, the bankruptcy court found that the Moskos satisfied their burden because the household's reasonable monthly expenses of $2,600 exceeded the couple's monthly income of $1,400. From Brenda's gross monthly income of $3,833, the bankruptcy court calculated the household's net monthly income by subtracting amounts for mandatory state retirement; federal and state taxes; life, dental, health, vision and teacher's liability insurance; repayment of a loan from Brenda's 401(k); an income deferral to pay Brenda during the summer months; and a nominal charitable contribution. The bankruptcy court found that the household's reasonable monthly expenses equaled $2,600 for rent, utilities, telephone, long distance service, day care, car payment, car insurance, groceries, trash, gasoline, and medical expenses related to Robert's EDS. The bankruptcy court found that Robert would need to earn at least $30,000 annually (for a total household income of approximately $68,000) before the household's monthly net income would equal their expenses.[3]

The bankruptcy court held that Brenda met part two of the *Brunner* test because her salary was unlikely to increase beyond cost-of-living pay increases. However, the bankruptcy court ruled that Robert did not satisfy part two because he had presented no evidence indicating that his EDS permanently prevented him from returning to work. The bankruptcy court noted that if his EDS improved or if he returned to work despite his EDS, then he could contribute to the household income. Finally, the bankruptcy court determined that the Moskos proved part three because they made 24 regular payments on their loans, made sporadic payments when they could, and requested loan deferments and forebearances. The bankruptcy court discharged all of

---

[3]Such a conclusion certainly suggests a close examination of the Moskos' financial situation is in order, because it would mean that the Moskos could not manage their expenses unless they made $22,000 above the median household income for that locale. *See* U.S. Census Bureau, 2005 Small Area Income & Poverty Estimates: Davie County 2005, http://www.census.gov/cgi-bin/saipe/saipe.cgi (last visited Jan. 10, 2008).

Brenda's student loans, but granted Robert only a partial discharge. ECMC then appealed to the district court the bankruptcy court's discharge order.

The district court also noted that a debtor must meet all three parts of the *Brunner* test to receive any discharge. However, because the district court found the bankruptcy court order could be interpreted to indicate that Robert had not met the second requirement, it remanded the case for clarification. Additionally, the district court instructed the bankruptcy court to analyze the discharge of each of the Moskos' student loans in light of the household's income.

On remand, the bankruptcy court found that Robert did meet the second requirement and that his EDS prevented him from repaying *any* portion of his student loans. The bankruptcy court then fully discharged both Robert's and Brenda's student loans. ECMC appealed and the district court affirmed. ECMC then appealed to this court.

## II.

Debtors seeking to discharge their student loans bear the burden of proving that they are "in the *limited class* of debtors for which § 523(a)(8) meant to allow discharge." *In re Frushour*, 433 F.3d at 404 (emphasis added). On an appeal from a district court, we review the bankruptcy court's decision directly. *Banks v. Sallie Mae Servicing Corp.*, 299 F.3d 296, 300 (4th Cir. 2002). We review *de novo* whether a debtor has demonstrated each of the three parts of the *Brunner* test by a preponderance of the evidence, and we review for clear error the facts underlying that legal conclusion. *See In re Frushour*, 433 F.3d at 399. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948).

We need not decide whether the Moskos have satisfied the first and second parts of the *Brunner* test because we find that they have failed to satisfy the third part.[4]

---

[4]Although we do not decide part one of the *Brunner* test, we note that several of the bankruptcy court's factual findings in calculating the

### III.

Applying part three of the *Brunner* test, we find that the Moskos have not made a good-faith effort to repay their loans. *See Brunner v. New York State Higher Educ. Services*, 831 F.2d 395 (2d Cir. 1987). Good faith consists of the debtor's "efforts to *obtain employment*, *maximize income*, and *minimize expenses*." *O'Hearn v. Educ. Credit Mgmt. Corp.*, 339 F.3d 559, 564 (7th Cir. 2003) (internal quotation marks omitted)(emphasis added). Furthermore, a debtor may not "willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." *Id.* (internal quotation marks omitted). Finally, the debtor must seriously pursue loan consolidation options. *See In re Frushour*, 433 F.3d at 402.

The Moskos have not demonstrated a good-faith effort to obtain employment and maximize income. Brenda does not work during the summer months because she wishes to spend time with her son and care for her mother. While this desire may be understandable, it is not an undue hardship for her to endure the sacrifice most parents experience in working a full calendar year. *See In re Wegrzyniak*, 241 B.R. 689, 695 (Bankr. D. Idaho 1999)(stating that requiring a teacher to work during the summer months merely "requi[res] the debtor to do what so many parents must.").

---

Moskos' monthly budget are clearly erroneous. For example, the bankruptcy court's finding of a minimum automobile gasoline expenditure of $350 per month would equate to a monthly mileage of 3,000, which is not supported by any evidence in the record. Similarly, the court's use of a $415 per month car payment as a continuing expense is not supported by the facts since the final car payment was due only three months after the bankruptcy court hearing. In light of the $3,639 federal and state income tax refund the Moskos received in 2004, the bankruptcy court should have accounted for their tax refund in 2005. Either the refund must be added to the Moskos' income or their withholding must be adjusted; to do neither creates a clearly erroneous statement of income, and here no such adjustment was made. Such erroneous findings concerning the Moskos' budget hinder efforts to determine whether they acted in good faith to repay their student loans.

Aside from his unemployment benefits, Robert Mosko has not contributed to the household income since Lowe's terminated his employment in August 2004. The record does not show that his medical condition precludes him from all part-time employment, self-employment, or other work from home.[5] Furthermore, Robert refused a job offer because he would have been paid his regular hourly wage for the overtime hours he worked.[6] This refusal does not constitute good faith because many in Robert's financial situation must work two jobs, *see In re Koch*, 144 B.R. 959, 965 (Bankr. W.D. Pa. 1992) (finding no good faith where a debtor did not seek part-time employment to supplement the income from his current full-time job), without receiving overtime pay for the second job.

In addition, the budget the Moskos presented to the bankruptcy court does not minimize their expenses. Each month, the Moskos spend $75 for internet, $80 for cell phones, $60 for satellite television, $68 for a YMCA membership, and an undisclosed amount for cigarettes. Expenditures on such items are generally unnecessary to maintain a minimum standard of living and, under the facts of this case, the failure to minimize or eliminate these expenditures does not demonstrate a good-faith effort to minimize expenses. *See In re Buchanan*, 276 B.R. 744, 751-52 (Bankr. N.D. Va. 2002) (stating that foregoing satellite television and internet service does not constitute an undue hardship).

Furthermore, the Moskos' actual expenditures do not demonstrate an effort to minimize expenses.[7] Between December 2, 2004 and March 1, 2005, the Moskos spent over $1,600 at Circuit City, Best

---

[5]In its first opinion, the bankruptcy court noted that Robert is skilled and currently employable.

[6]Although Robert asserts this arrangement would violate the law, nothing in the record substantiates this assertion.

[7]The Moskos argue that the court should examine only the budget proposed to the bankruptcy court, and not their actual expenditures. This argument confuses the purposes of part one and part three of the *Brunner* test. The budget proposed to the bankruptcy court under part one is prospective and determines whether the debtors can maintain a minimum standard of living going forward. However, a determination of good faith under part three necessarily includes a retrospective analysis because it focuses on the debtors' prior actions. We analyze the payments that debtors have *made* on their loans. *See Frushour*, 433 F.3d at 402. Similarly, we do not judge a debtors' mere proposals, but their actual "efforts" to minimize expenses. *See O'Hearn*, 339 F.3d at 564 (citation omitted). Therefore, it is appropriate to examine the Moskos' actual expenditures in our analysis of their good faith.

Buy, Amazon.com, and Radio Shack; over $3,000 at Sam's Club, Wal-mart, and Kmart;[8] and over $800 on computer software related purchases. We conclude that their expenditures do not indicate a good faith effort to minimize expenses. Furthermore, the Moskos' failure to minimize expenses during a period when Robert was unemployed indicates that their own negligence contributed to their current financial situation. *See O'Hearn*, 339 F.3d at 564 (citation omitted).

Additionally, the payments the Moskos made on their student loans are insufficient to demonstrate good faith because they failed to make payments on their student loans during a time period when their income substantially exceeded their necessary expenses. The record does not indicate that the Moskos made any payments during 2004 when Robert worked at Lowe's and the couple's adjusted gross income totaled $64,130.[9] Furthermore, Robert received unemployment benefits until March 2005. During the time Robert received these benefits, the Moskos' net income exceeded the bankruptcy court's determination of the Moskos' reasonable expenses by at least $480 per month.[10] The Moskos' failure to make payments during their

---

[8]The Moskos claim that some of their expenditures at Sam's Club, Wal-mart and Kmart were for necessities such as groceries. However, the Moskos' claimed monthly budget for groceries is $450. Even assuming the Moskos purchased all their groceries at these stores during this three-month period, that still leaves an unexplained balance of at least $1,650.

[9]The bankruptcy court's opinion states that the Moskos made payments when they could after they made their 24 regular payments. However, Robert testified that the couple made those irregular payments "[p]rior to" their 24 regular payments. App. A. 11. The regular monthly payments were made between August 2001 and August 2003. Therefore, the Moskos did not testify that they made any payments after August 2003.

[10]Robert's $420 per week in unemployment benefits equals monthly income in excess of $1,680. When added to the bankruptcy court's calculation of Brenda's monthly net income of $1,400, less reasonable expenses of $2,600, the household's monthly surplus would exceed $480. We have indicated that the bankruptcy court made erroneous findings as to the Moskos' budget. *See supra* note 4. In light of these errors, the Moskos' monthly surplus was likely significantly larger than this amount.

budgetary surplus from 2004 until March 2005 does not demonstrate good faith.

Finally, the Moskos failed to adequately pursue loan consolidation options. We have stated that seeking out loan consolidation options is "an important component of the good-faith inquiry" because such efforts demonstrate that the debtors take their debts seriously and are doing their utmost to repay them despite their unfortunate circumstances. *See In re Frushour*, 433 F.3d at 402. Based on the Moskos' adjusted gross income of $64,130 in 2004, their monthly payments under the income-contingent William D. Ford Direct Loan Consolidation Program would be approximately $319 per month. The Moskos presented no evidence explaining why these payments were unaffordable in 2004 when their monthly income averaged approximately $5,344. Furthermore, the record indicates that since the Moskos' annual adjusted gross income fell in 2005, the payments required under the loan consolidation program would have decreased. However, the Moskos never presented any evidence indicating that they had pursued an alternate amount of monthly payments based upon their annual adjusted gross income at the time of the bankruptcy hearing.

The Moskos argue that their request of deferments and forebearances on their student loans demonstrates good faith. If the Moskos had followed their receipt of these deferments and forebearances with additional payments on their student loans, or at least efforts to work out a reasonable repayment schedule, then such actions might help them establish good faith. However, without reasonable efforts to make subsequent payments, requesting deferments and forebearances alone does not establish good faith.

Accordingly, we find that the Moskos have not met their burden of establishing a good-faith effort to repay their student loans.

## IV.

Since the Moskos have failed to demonstrate the good faith required by the *Brunner* test, they have failed to prove that they are entitled to a discharge of their student loans. *See In re Frushour*, 433 F.3d at 404. Therefore, we reverse the district court's decision affirm-

ing the bankruptcy court's discharge of the Moskos' student loans held by ECMC.

*REVERSED*