In re Susan Elaine ROBINSON, Debtor.

Susan Elaine Robinson, Plaintiff,

v.

Educational Credit Management Corporation, Defendant.

Bankruptcy No. 06–11185–WV.
Adversary No. 07–1146–WV.

United States Bankruptcy Court, W.D. Oklahoma.

July 8, 2008.

B. David Sisson, Norman, OK, for Plaintiff.

Mac D. Finlayson, Tulsa, OK, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

T.M. WEAVER, Bankruptcy Judge.

This matter came on for trial on June 3, 2008, on the adversary complaint brought by the plaintiff Susan Elaine Robinson seeking a discharge of her student loan debt pursuant to 11 U.S.C. § 523(a)(8).[1]

1. Unless otherwise specified, all references to sections herein are to title 11 of the United States Code.

2. The court incorporates in its factual findings the parties' stipulations as contained

After having heard the evidence and the arguments of counsel and having reviewed the applicable law, the court issues the following findings of fact and conclusions of law in accordance with FED.R.CIV.P. 52, which is made applicable to this proceeding by FED. R. BANKR.P. 7052.

### Jurisdictional Statement

This court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the order of the District Court authorizing referral of proceedings to the bankruptcy judges. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O) and, to the extent the proceeding may be noncore, the parties have consented to the entry of final judgment by this court.

### Findings of Fact[2]

1. The plaintiff is the debtor in the captioned chapter 7 bankruptcy case.

2. The plaintiff was originally indebted on the date she initiated this adversary proceeding, under an education consolidation promissory note (the "Consolidation Note") executed by her on June 30, 2000, in the original principal amount of $72,454.69.

3. With interest accrued, the current unpaid principal and interest balance due on the Consolidation Note was the sum of $119,679.04 as of August 27, 2007, plus interest accruing.

4. Following the execution of the Consolidation Note, the plaintiff obtained numerous forbearances and deferments in payment, totaling forty-eight (48) moths of forbearances.

within the Joint Final Pre–Trial Order entered on May 30, 2008, and reiterates here several that are particularly relevant to the undue hardship analysis.

5. The plaintiff initiated her bankruptcy case on May 3, 2006. She has not made any payments on the Consolidation Note.

6. The plaintiff is a divorced 52–year-old female, having been divorced in 1993. The plaintiff has no dependents.

7. The plaintiff obtained a bachelor's degree in Fitness and Wellness Management from Southern Nazarene University in 1994, a Master's degree in Education in 1996, and Doctor of Education (Ed.D.) degree in Applied Educational Studies in Health Promotion from Oklahoma State University in 2000. At the time she received her doctoral degree, the plaintiff was 45 years of age.

8. The plaintiff is currently employed by the State of Oklahoma as an educator and mentor of state employees in a "comprehensive Lifestyle management program."

9. The plaintiff currently earns gross pay in the amount of $3,387.82 per month, or $40,653.84, annually, and net pay of $2,045.54 per month, or $24,546.48, annually. Deductions from the plaintiff's take home pay include amounts for life insurance, medical reimbursement, and health and dental insurance.

10. The plaintiff's 2006 income tax returns reflects adjusted gross income ("AGI") of $28,125.00.

11. The plaintiff owns a 2007 Mercury Mountaineer sport utility vehicle, which she purchased in August, 2007, and which carries a monthly payment of $446.00, yet she testified that she rides public transportation to and from her job four days per week at a cost of $50.00 per month. The plaintiff drives her car to work one day per week. As stipulated in the Joint Final Pre–Trial Order, the plaintiff's current expenses include charitable contributions of $150.00 per month, miscellaneous and gift expense of $40.00 per month, and $125.00 per month for savings. The plaintiff testified that she has approximately $25.00 per month left over after the payment of her expenses, but she plans to use this amount to provide lawn service to her mother.

12. The William D. Ford Direct Loan Program (the "WDF Program") is a federally-insured student loan program governed and administered pursuant to federal regulation by the United States Department of Education. The plaintiff is eligible to participate in the WDF Program.

13. The WDF Program includes different payment options for borrowers, including the Income Contingent Repayment Plan ("ICRP"). The monthly payment under the ICRP is calculated and adjusted annually based upon the borrower's adjusted gross income and the poverty guidelines for the borrower's family size. Based on these factors, the loan balance and interest rate are irrelevant.

14. Because the monthly ICRP payment is calculated as a percentage of the borrower's income, if the borrower's income drops, the monthly payment is reduced accordingly. If the borrower's income falls below the poverty level, the borrower pays $0. At the end of the 25–year payment terms, any remaining unpaid balance would be cancelled, although, under current regulations, a tax liability for the plaintiff may result from such cancellation.

15. Using the calculator tool found on *www.loanconsolidation.ed.gov*, the ICRP payments based on the plaintiff's family size of one (1) and 2006 AGI of $28,125.00, would be $295.42 per month.

16. The ICRP payment is recalculated annually based on financial information reported on the plaintiff's federal tax return.

17. The plaintiff reports no health impediments and lives alone.

18. The court observed the plaintiff to be a bright, articulate and highly-educated woman.

19. Of the plaintiff's total unsecured, non-priority debt of $129,544.68, as listed in her bankruptcy schedules, $106,225.00, or 81 %, were related to student loans.

20. The plaintiff testified that she investigated the WDF Program online and looked at the payment calculator. She rejected applying to the program, however, for several reasons. First, as a result of the 25–year term of the note and her current age, she testified that she would be close to 80–years–old and still making student loan payments. She was also concerned about the tax consequences of the loan cancellation. Further, she testified that the programs available under the WDF Program were unaffordable based on her current income.

*Conclusions of Law and Discussion* [3]

 The Bankruptcy Code creates a presumption that student loans are nondischargeable in the absence of undue hardship to the debtor or the debtor's dependents. § 523(a)(8). A debtor seeking a discharge of a student loan bears the burden of proof on the issue of undue hardship. *Woodcock v. Chemical Bank, NYSHESC (In re Woodcock)*, 45 F.3d 363, 367 (10th Cir.1995).

 The test for establishing "undue hardship" requires a three-part showing:

(1) The Debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for himself and his dependents if forced to repay the loan(s);

(2) That additional circumstances exist indicating that this state of affairs is likely to persist for a significant por-

tion of the repayment period of the student loan(s); and,

(3) That the Debtor has made a good faith effort to repay the loan(s).

*Educational Credit Mgmt. Corp. v. Polleys (In re Polleys)*, 356 F.3d 1302 (10th Cir.2004)(adopting the three-prong test set forth in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987)). The *Polleys* court cautioned, however, that an "overly restrictive interpretation of the *Brunner* test fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor, ... and can cause harsh results for individuals seeking to discharge their student loans." *Id.* at 1308. If the debtor fails to establish the presence of any of the these three factors, the student loan debt is nondischargeable.

 The first prong of the *Brunner* test requires the debtor to demonstrate "more than simply tight finances." *Innes v. State of Kansas (In re Innes)*, 284 B.R. 496, 504 (D.Kan.2002). Something more than temporary financial adversity is required, but utter hopelessness is not the standard. "A minimal standard of living includes what is minimally necessary to see that the needs of the debtor and [her] dependents are met for care, including food, shelter, clothing, and medical treatment." *Id.*

 The second prong of *Brunner* requires that the debtor show additional circumstances indicating that she will be unable to repay the loans and maintain a minimal standard of living for a significant portion of the repayment period. This standard "properly recognizes that a student loan is viewed as a mortgage on the

---

**3.** To the extent that any of the factual findings are more appropriately included in the court's conclusions of law, the court hereby incorporates such findings in this section of the order.

debtor's future." *Polleys*, 356 F.3d at 1310. However, the debtor need not show a "certainty of hopelessness." *Id.* Instead, the court must take a realistic look into the debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like. *Id.* The court should base its estimation of a debtor's future prospects on "specific articulable facts, not unfounded optimism," and the inquiry into future circumstances should be limited to the foreseeable future, at most over the term of the loan. *Id.* The "discharge of a student loan should be based upon an inability to earn and not simply a reduced standard of living." *Id.* at 1311.

▮▮▮▮ The third prong of *Brunner* requires the court to determine if the debtor has made a good faith effort to repay the loan "as measured by ... [her] efforts to obtain employment, maximize income and minimize expenses." *Innes*, 284 B.R. at 510. The inquiry into a debtor's good faith should focus on questions surrounding the legitimacy of the basis for seeking a discharge. *Polleys*, 356 F.3d at 1310. For instance, "a debtor who willfully contrives a hardship in order to discharge student loans should be deemed to be acting in bad faith." *Id.* But, a court should not impose its "own values on a debtor's life choices." *Id.* In addition, a court should review the "steps taken by the debtor prior to filing for bankruptcy in determining whether the debtor was acting in good faith." *Alderete v. Educational Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1206 (10th Cir.2005). The debtor's "efforts to cooperate with her lenders show that she was acting in good faith in working out a repayment plan." *Polleys*, 356 F.3d at 1312.

▮▮▮▮ A debtor's failure to explore loan consolidation options may be given "significant weight" by the bankruptcy court in its determination of a debtor's good faith. *Alderete*, 412 F.3d at 1206. While such failure is not determinative of the good faith inquiry, it can be "an important indicator of good faith." *Id.* The *Alderete* court found that the debtors did not prove good faith when they did not consider applying for the William D. Ford income contingent plan even though the court was not certain they were even eligible for the plan. *Id.* at 1206 n. 1. *See Educational Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393, 402 (4th Cir.2005)(although not always dispositive, a debtor's effort to seek out loan consolidation options "illustrates that the debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her unfortunate circumstances"); *Tirch v. Pennsylvania Higher Educ. Assis. Agency (In re Tirch)*, 409 F.3d 677, 682 (6th Cir.2005)(the court found that, although not a *per se* indication of lack of good faith, the debtor's decision not to take advantage of the ICRP "is probative of her intent to repay her loans"). *See also, Educational Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 326 (4th Cir.2008)(the debtors' efforts to pursue loan consolidation options is "an important component of the good-faith inquiry" because it "demonstrate[s] that the debtors take their debts seriously" and have made a good faith effort to repay)(citing *Frushour*).

▮▮▮ The plaintiff contends that she has met all three prongs of the *Brunner* test, and, as a result, her student loan indebtedness should be discharged as constituting an undue hardship. In response, ECMC argues that the plaintiff has failed to satisfy any of the *Brunner* prongs, and the court should rule against the plaintiff and in favor of ECMC. After review of the evidence and the applicable law, the court determines that this case turns on the issue of the plaintiff's good faith, the third

prong of the *Brunner* test, and rules accordingly.

Again, under the third prong of the *Brunner* test, the plaintiff must show that she "has made good faith efforts to repay [her] loans." *Brunner*, 831 F.2d at 396. In this case, the plaintiff is eligible to participate in the WDF Program and is allowed to make a monthly payment on her student loan indebtedness of $295.42 under the ICRP. Such payment would increase if the plaintiff's income increased and decrease if her income decreased. Based on the court's review of the plaintiff's current income and expenditures, the plaintiff could make a monthly payment in the amount of $295.42. While the plaintiff testified that she only has $25.00 per month left after the payment of her expenses, and her plans for that amount are to provide lawn service for her mother rather than payment of student loan indebtedness, the plaintiff could minimize her expenses to enable her to pay the amount due monthly under the ICRP. For example, the plaintiff drives a 2007 sport utility vehicle she has owned for less than a year and which requires a monthly payment of $446.00, although she uses public transportation four out of five days of the work week at a cost of $50.00 per month. Clearly, the plaintiff could minimize her transportation expense substantially by purchasing a less expensive vehicle and by utilizing public transportation exclusively to get to and from work. Further, while the plaintiff includes $125.00 in her monthly budget for savings, this amount could be available to make her ICRP payment on a monthly basis. These items, in addition to the $25.00 per month the plaintiff intends to use to provide lawn service for her mother, will provide a sufficient amount each month for the plaintiff to service her ICRP payment. The court thus disagrees with the plaintiff's argument that the ICRP payment is unaffordable for her based on her current income. In addition, should the plaintiff's income increase in the future, the corresponding increase in the ICRP payment will be based on such increase in her income. Or, if the plaintiff's income decreases, the ICRP payment will decrease as well. Consequently, the plaintiff's failure to show that she has minimized her expenses demonstrates, in part, her lack of good faith.

Moreover, the plaintiff has failed to avail herself of the WDF Program, although she is eligible to consolidate her student loans thereunder. As previously stated, a debtor's decision not to take advantage of such consolidation is probative of her good faith under the *Brunner* test. The court finds uncompelling the plaintiff's two articulated bases for her not pursuing the WDF Program. First, the plaintiff argues that she would be eighty years old and still making student loan payments if she were to consolidate her student loans under the WDF Program. While it is true that the ICRP's 25–year term would result in the plaintiff's being obligated to make student loan payments until she is nearing the age of eighty, this result is simply a function of the plaintiff's age at the time she obtained her degrees and executed the Consolidation Note and her exercise of forbearances prior to filing her bankruptcy case. Regardless, the payment amount is determined by the amount of the plaintiff's income, so if her income decreases as she advances in age, the required payment will be concomitantly reduced. Second, the plaintiff argued that she wanted to avoid the potential tax liability resulting from the cancellation of her indebtedness after 25 years. While the possible tax implications of the ICRP are not to be ignored, they are of much lesser importance than the plaintiff's showing of good faith in repayment of her student loans. Considering these proffered bases for the plaintiff's

734

failure to pursue the WDF Program, the court concludes that the plaintiff failed to take her student loan obligations seriously and further failed to sincerely consider the repayment options available under the WDF Program, both of which are highly probative on the good faith inquiry.

The court also relies for factual support on its finding that the plaintiff has failed to make any payments on her student loan indebtedness since earning her doctoral degree and entering into the Consolidation Note. Further, 81% of the plaintiff's total unsecured, non-priority debt was related to her student loan indebtedness which she seeks to discharge in this adversary proceeding.

For these reasons, the court finds that the plaintiff has failed to establish that she has made a good faith effort to repay her student loan indebtedness under the third prong of the *Brunner* analysis. Accordingly, the court finds in favor of ECMC and against the plaintiff on her adversary complaint seeking discharge of such indebtedness under § 523(a)(8). An appropriate judgment shall issue.