**In re Jana Lee BROWN, Debtor.**

**Jana Lee Brown, Plaintiff,**

v.

**Sallie Mae, Inc. and Educational Credit Management Corporation, Defendants.**

**Bankruptcy No. 09–21655 MER.**
**Adversary No. 09–1568 MER.**

United States Bankruptcy Court, D. Colorado.

Sept. 23, 2010.

Robert H. Carpenter, Centennial, CO, for Plaintiff.

Sallie Mae, Inc., pro se.

Alex Myers, Denver, CO, for Defendants.

## ORDER

MICHAEL E. ROMERO, Bankruptcy Judge.

THIS MATTER comes before the Court on the Complaint to Determine Dischargeability of Debt filed by Jana Lee Brown ("Brown") and the Answer filed by Educational Credit Management Corporation ("ECMC").[1] The Court has reviewed the pleadings, heard the testimony and arguments presented at trial, examined the pertinent case law, and hereby makes the following findings of fact and conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as it involves the dischargeability of a particular debt under 11 U.S.C. § 523(a) of the Bankruptcy Code.[2]

## BACKGROUND FACTS

Brown filed the instant Chapter 7 bankruptcy petition on June 15, 2009, and received a general discharge of her debts on October 30, 2009. In her Schedules, Brown listed no real property, minimal personal property totaling $3,741.00, no secured or priority debts, and a total of

---

1. Brown originally named the following Defendants: (1) Sallie Mae, Inc., (2) United States Department of Education, (3) College Assist, (4) Nelnet Loans, (5) Colorado Student Loan Program, and (6) Education Credit Management Corporation. On November 4, 2009, College Assist, Nelnet Loans, Colorado Student Loan Program and the United States Department of Education were dismissed. Sallie Mae is still a named Defendant, but the parties proceeding to trial are Brown and ECMC.

2. Unless otherwise noted in the text, statutory references are to Title 11 of the United States Code.

$33,878.11 in unsecured debt.[3] Her Schedules I and J reflect average monthly income of $1,631.61 and average monthly expenses of $2,078.00, for monthly net income of negative $446.39.[4] Brown also offered a "projected" Schedule J at trial showing increased expenses of $2,226.00.[5] Brown commenced this adversary proceeding on September 21, 2009, seeking a determination her student loan debt is dischargeable as an undue hardship within the meaning of § 523(a)(8). In their Joint Pretrial Statement, Brown and ECMC agreed on the following stipulated and uncontested facts:

1. Plaintiff was born on April 1, 1985, and is currently 25 years old.

2. Plaintiff has three children: [6]

 a. S.L., born in 2005 (age 4);

 b. A.L., born, in 2006 (age 3); and

 c. A.L., born in 2009 (age 1).

3. The father of Plaintiff's three children is Jose Juan Lopez.

4. Plaintiff and Mr. Lopez were never formally married, but were common-law married.

5. From October 2005 to September 2006, Plaintiff attended Kaplan College ("Kaplan"), 5800 E. 84th Ave., W200, Thornton, CO 80229.

6. While at Kaplan, Plaintiff studied to be a Medical Assistant and in September 2006, received her Medical Assistant diploma.

7. Plaintiff financed her education at Kaplan through student loans.

8. Plaintiff applied for and received the following four student loan disbursements: [7]

 a. $4,000, originated on November 14, 2005;

 b. $2,625, originated on November 14, 2005;

 c. $875, originated on May 15, 2006; and

 d. $1,334, originated on May 15, 2006.

9. In August, 2007, Plaintiff consolidated her four student loans, including the accrued interest, by applying for and receiving a single consolidation loan in the amount of $8,575.50 (the "Consolidation Loan").[8]

10. Plaintiff received the full principal amount of the Consolidation Loan.

11. Plaintiff received the benefit of the proceeds from the Consolidation Loan.

12. Plaintiff has not repaid the Consolidation Loan, including the full amount of the principal with interest.

13. Plaintiff currently owes an outstanding balance, including interest, of $10,495.79 on her Consolidation Loan.[9]

14. Based upon the Consolidation Loan interest rate of 7.25%, interest is accruing at a rate of $2.00 per day.

15. The only basis on which Plaintiff is seeking discharge is that excepting the Consolidation Loan from discharge

---

3. ECMC Exhibit L, Schedules A, B, D, E and F.

4. ECMC Exhibit L, Schedules I and J.

5. Brown Exhibit 9, ECMC Exhibit G, Projected Schedule J.

6. Brown Exhibit 1, Birth Certificates. At the July 15, 2010 hearing, the Court specifically ordered, "All exhibits admitted, and any transcripts ordered, in connection with this proceeding shall be redacted in compliance with

FED. R. BANKR.P. 9037. The Court retained the witness copy of the exhibit binders which counsel redacted in the courtroom. All other exhibit binders were returned to counsel."

7. ECMC Exhibit J, Loan History.

8. ECMC Exhibit C, Federal Consolidation Loan Application and Promissory Note.

9. ECMC Exhibit D, Current Loan Detail Worksheet.

would create an undue hardship on Plaintiff.

16. In 2009, Plaintiff's adjusted gross income was $11,810.00.[10] Plaintiff received a federal tax refund of $6,837.00 and a Colorado refund of $138.00.

17. In 2008, Plaintiff's adjusted gross income was $21,368.00.[11] Plaintiff received a federal tax refund of $6,483.00 and a Colorado refund of $342.00.

18. In 2006, Plaintiff's adjusted gross income was $13,343.00.[12] Plaintiff received a federal tax refund of $5,369.00 and a Colorado refund of $250.00.

19. In 2005, Plaintiff's adjusted gross income was $16,589.00.[13] Plaintiff received a federal tax refund of $3,233.00 and a Colorado refund of $255.00.

20. Plaintiff has not applied for the William D. Ford Federal Direct Loan Program ("Ford Program").

21. Under the Ford Program, Plaintiff's monthly payment repayment options include:

 a. Standard repayment over 120 months: $123.21/month.

 b. Graduated repayment over 120 months: start at $85.22/month.

 c. If Plaintiff were to participate in the Ford Income Contingent Repayment Program (the "ICRP"), her monthly payments would be set based upon her household size and adjusted gross income. Based upon Plaintiff's reported income in 2009, Plaintiff's payment under the ICRP would be $0.00/month.

22. Plaintiff has not applied for the Income–Based Repayment (IBR) program, which is an alternative payment program made available as of July 1, 2009.[14]

 a. Under the IBR, Plaintiff's monthly payments would be set based upon her household size and adjusted gross income.

 b. Based upon Plaintiff's reported income in 2009, Plaintiff's payment under the IBR would be $0.00/month.

23. Plaintiff has not applied for an administrative discharge of her Consolidation Loan based upon total and permanent disability.[15]

## DISCUSSION

■ Section 523 governs exceptions to discharge and provides, in relevant part, as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . .

(8) unless excepting such debt from discharge under this paragraph would impose an undue hardship on the debtor and the debtor's dependents, for—

(A)(i) an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution; or

---

10. Brown Exhibit 3, 2009 Federal and Colorado Income Tax Returns.

11. Brown Exhibit 4, 2008 Federal and Colorado Income Tax Returns.

12. ECMC Exhibit H, 2006 Federal and Colorado Income Tax Returns.

13. ECMC Exhibit I, 2005 Federal and Colorado Income Tax Returns.

14. ECMC Exhibit A, Letter dated October 6, 2009 from Alex Myers (ECMC's counsel) to Robert Carpenter (Brown's counsel) explaining the IBR program.

15. Joint Pretrial Statement, pp. 2–4.

(ii) an obligation to repay funds received as an educational benefit, scholarship, or stipend; or

(B) any other educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986, incurred by a debtor who is an individual;

The burden of proof rests upon Brown to demonstrate such undue hardship.[16]

■ In *Brunner v. New York State Higher Educ. Services Corp.*, the Second Circuit Court of Appeals adopted the following three-part test to establish an undue hardship under § 523(a)(8):

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[17]

The Tenth Circuit Court of Appeals discussed the *"Brunner* test" in *Educational Credit Management Corp. v. Polleys* and cautioned against an "overly restrictive interpretation" of the test which "fails to further the Bankruptcy Code's goal of providing a 'fresh start' for the honest but unfortunate debtor."[18] The Tenth Circuit also discussed the less restrictive approach taken by the Eighth Circuit Court of Appeals' "totality of the circumstances" test:

Under the Eighth Circuit's "totality of the circumstances" test for undue hardship, bankruptcy courts should consider:

(1) the debtor's past, present, and reasonably reliable future financial resources; (2) a calculation of the debtor's and her dependent's reasonable necessary living expenses; and (3) any other relevant facts and circumstances surrounding each particular bankruptcy case. Simply put, if the debtor's reasonable future financial resources will sufficiently cover payment of the student loan debt-while still allowing for a minimal standard of living-then the debt should not be discharged.[19]

■ After contrasting these two tests, the Tenth Circuit concluded:

We therefore join the majority of the other circuits in adopting the *Brunner* framework. However, to better advance the Bankruptcy Code's "fresh start" policy, and to provide judges with the discretion to weigh all the relevant considerations, the terms of the test must be applied such that debtors who truly cannot afford to repay their loans may have their loans discharged. Additionally, we think that the good faith portion of the *Brunner* test should consider whether the debtor is acting in good faith in seeking the discharge, or whether he is intentionally creating his hardship.

In *Brunner*, the Second Circuit found the debtor did not meet her burden as she filed for bankruptcy only ten months after receiving her degree, did not show her current unemployment would extend for a lengthy period of time, was not disabled or elderly and did not have any dependents. The Second Circuit also noted "[m]oreover, she did so without first requesting a deferment of payment, a less drastic remedy available to those unable to pay because of

---

**16.** *In re Roberson,* 999 F.2d 1132, 1137 (7th Cir.1993).

**17.** *Brunner v. New York State Higher Educ. Services Corp.,* 831 F.2d 395 (2nd Cir.1987).

**18.** *Educational Credit Management Corp. v. Polleys,* 356 F.3d 1302, 1308 (10th Cir.2004).

**19.** *ECMC v. Polleys,* 356 F.3d at 1308, *quoting In re Long,* 322 F.3d 549, 554–555 (8th Cir. 2003).

prolonged unemployment. Such conduct does not evidence a good faith attempt to repay her student loans." [20]

In *Polleys*, the Tenth Circuit found the debtor met the "undue hardship" requirement and discharged the student loans. In so finding the Tenth Circuit considered the debtor's mental health problems, the fact that she consolidated her loans and entered into the deferral programs, her attempts to find work within and outside her field, and a finding that she acted in good faith.

As is more fully discussed below, the Court believes the facts in the case at hand fall somewhere in between those in *Brunner* and *Polleys*. Brown concedes that ordinarily her student loan debt would be nondischargeable in a Chapter 7. However, she argues her circumstances are such that repayment of the Consolidation Loan would impose an undue hardship on her and her children. Brown argues the following facts support her claim of undue hardship: Brown is not married, she has three children, she does not receive any child support, she lost her job in July 2009 and has only been able to find temporary or part-time work since then, and she suffers from bipolar disorder and schizophrenia.

ECMC contends Brown cannot establish all three *Brunner* prongs because she is only 25 years old, completed her education to be a medical assistant, has no disability to prevent her from working, chose to expand her family, has not made any payments on the four prior loans or the Consolidation Loan, and has failed to apply for the William D. Ford Federal Direct Loan Program or the Ford Income Contingent Repayment Program.[21]

**A. Can Brown, based on current income and expenses, maintain a minimal standard of living for herself and her dependents if she is forced to repay her student loan debt?**

 Brown certainly meets the first prong of the *Brunner* test. Her Schedules I and J show average monthly income of $1,631.61 and average monthly expenses of $2,078.00, for monthly net income of negative $446.39.[22] Brown also offered a "projected" Schedule J at trial showing increased expenses of $2,226.[23] ECMC has not challenged the reasonableness of any of Brown's expenses. It is undisputed Brown is not working full time and has relied on assistance from family (in the form of money, household goods, food and child care) to provide basic necessities for herself and her children. Therefore, the Court finds Brown has established, based on current income and expenses, she is not able to maintain a minimal standard of living for herself and her three children (with or without having to repay the loans).

**B. Do additional circumstances indicate that this state of affairs is likely to persist throughout the period of repayment of the student loan debt?**

Brown described her prospects of obtaining a job using her medical assistant

**20.** *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d at 397.

**21.** The Court has considered all of ECMC's arguments, as further discussed below, with the exception of Brown's family size. Under the facts of this case, that issue is not relevant. *See Educational Credit Management Corp. v. Polleys*, 356 F.3d 1302, 1310 (10th Cir.2004) ("Good faith should not be used as a means for courts to impose their own values on a debtor's life choices.").

**22.** ECMC Exhibit L, Schedules I and J.

**23.** Brown Exhibit 9, ECMC Exhibit G, Projected Schedule J.

degree as "not very good," because she has not been able to secure even one interview in that field since she completed her program at Kaplan, and thus has no experience.[24] As more fully set forth below, her other jobs have included several restaurants, a check advance store, babysitting and housecleaning. Even if Brown never enters the medical field, there was no testimony to indicate she would not be able to improve her position or wage given her young age and experience in the customer service and restaurant industry.

The only additional circumstance presented was Brown's own testimony regarding her bipolar disorder and schizophrenia. While she testified these conditions will always effect her and make it difficult to work in the customer service industry, she also admitted she does not have any total disability and she is trying to keep her conditions under control with medication prescribed by her physician. The Tenth Circuit Court of Appeals, in an unpublished decision, affirmed the District Court's findings that the debtor failed to meet the second *Brunner* element where the debtor, "submitted only her own testimony concerning her medical condition, without any professional diagnosis or prognosis to show how her condition or symptoms might affect her ability to work in the future."[25] Thus, the Court cannot find additional circumstances indicate that this state of affairs is likely to persist throughout the period of repayment of the student loan debt.[26]

## C. Has Brown made a good faith effort to repay her student loan?

Even if Brown could satisfy the second element of Brunner, she has not shown a good faith effort to repay her Consolidation Loan. This conclusion is based primarily on Brown's failure to make any payments and failure to consider any deferral programs offered by ECMC.

Brown testified she was first billed for her student loans in January 2007. After that time, she moved several times and her mail did not keep up with her. At some point, she received notice her Consolidation Loan would be in default if payment was not made. To prevent the default, she intended to make two payments in and around February 2009 using funds from an anticipated bonus from her then-employer, Express Check Advance. However, she never received the bonus and did not make any payments on the Consolidation Loan. She later lost that job in July 2009, and did not receive unemployment benefits until October 2009. During her period of unemployment, Brown received some income from babysitting and house cleaning. In February 2010, she obtained her current position at McAlister's Deli, working 15 hours per week and earning $7.50 per hour. Brown continues to babysit, earning an additional $500 per month. Throughout this time period, Brown did not make a single payment on the four prior loans or the Consolidation Loan.

**24.** Brown offered her "Work–Search Log" showing she has completed an application or submitted her resume with approximately twenty-eight businesses. The first four entries are dated September 24, 2009, but none of the other entries are dated. Many of the entries indicate the business is not hiring, but an application was completed. None of the entries indicate she has applied for medical assistant positions, rather they are for cashier, receptionist, housekeeping, front desk clerk, photo shop manager, or any available. See Brown Exhibit 6.

**25.** *In re Roe,* 295 Fed.Appx. 927 (10th Cir. 2008) (unpublished).

**26.** The parties did not present evidence regarding the "period of repayment," presumably because the Debtor is in default and no period currently exists.

While relevant, "the failure to make a payment, standing alone, does not establish a lack of good faith" under the third *Brunner* element.[27] In *Polleys*, the Tenth Circuit also looked to other factors, including the timing of the bankruptcy and request for discharge in relation to when the student loans were obtained and became due, the debtor's efforts to cooperate with lenders and enter into deferral programs, the debtor's attempt to minimize expenses to repay the loans, and other factors which might bear on good faith or an abuse of the loans. Like the debtor in *Polleys*, Brown consolidated her loans and did not seek to discharge the Consolidated Loan immediately. The loans were consolidated in August 2007 and the bankruptcy was not filed until June 2009. However, unlike the debtor in *Polleys*, Brown has failed to apply for any of the deferral programs offered by ECMC, including the Ford Federal Direct Loan Program (and related Ford Income Contingent Repayment Program) and the Income–Based Repayment Program. Under both of these programs, based on Brown's current income and expenses, her payment would be $0.00 per month. According to her Schedule F, Brown's student loan debt is the largest debt at $9,712.00, representing 29% of the total unsecured debt of $33,878.11. In *Alderete*, the Tenth Circuit Court of Appeals found the debtors had not demonstrated good faith where the debtor, "had only made minimal payments on the loans and the loans accounted for 98% of the total debt to be discharged" and where the debtors "did not consider applying for the Income Contingency Repayment ("IRC") Plan offered by the Ford Program, which would have greatly reduced their monthly loan payments, until after the adversary proceeding was filed."[28] The same finding is appropriate in this case.

The facts surrounding Brown's attorney and filing fees also support a finding Brown has not made a good faith effort to repay her Consolidation Loan. Both Brown and her mother, Cynthia Orzech, testified Ms. Orzech paid for Brown's bankruptcy attorney and filing fees, a total of approximately $1,400 or $1,500 in June 2009. Brown later used her tax refund to repay her mother, arguably a pre-petition debt discharged in the bankruptcy. As argued by ECMC, that money could have gone towards the nondischargeable Consolidation Loan and evidences Brown has some ability to repay debts. For all of these reasons, the Court finds Brown has not made a good faith effort to repay her student loan as required under the third *Brunner* element.

## CONCLUSION

The Debtor certainly meets the first prong of the *Brunner* test in that she is not able to maintain a "minimal" standard of living for herself and her three children (with or without having to repay the loans). She is not working full time and

27. *ECMC v. Polleys*, 356 F.3d at 1311.

28. *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1206 (10th Cir. 2005). *See also In re Buckland,* 424 B.R. 883, 890 (Bankr.D.Kan.2010) ("The Tenth Circuit has also held that a debtors' willingness to consolidate his loan under the William D. Ford Federal Direct Student Loan Program's Income Contingent Repayment Plan ("ICRP") or Income Based Repayment ("IBR") is an important factor to consider in determining whether a debtor has made a good faith effort to repay a student loan debt."). *But see In re Pitts,* 432 B.R. 866, 869 (Bankr.M.D.Fla.2010) (Debtor sustained permanent disability after a serious car crash and his family of five was below the poverty guidelines. The Bankruptcy Court rejected case law "that requires debtors first to pursue debt forgiveness programs offered by student loan collection agencies before seeking relief under Section 523(a)(8).")

relies on family and charity to keep basic necessities for herself and her children. Despite this, the Court cannot find she meets the second and third prongs of *Brunner.* Accordingly,

IT IS ORDERED the Consolidation Loan owed to ECMC is nondischargeable, and judgment shall enter in favor of ECMC and against Brown.