**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 9, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

In re:

ROXANN ROE,

       Debtor.

ROXANN ROE,

       Plaintiff-Appellant,

v.

COLLEGE ACCESS NETWORK;
EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,
ECMC; UTAH HIGHER
EDUCATION AUTHORITY,

       Defendants-Appellees.

No. 08-4022
(D.C. No. 2:07-CV-00794-BSJ)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **PORFILIO**, and **TYMKOVICH**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Appellant Roxann Roe, proceeding pro se, filed for bankruptcy after borrowing approximately $88,000 to attend college. Because her student loans could not be discharged absent a finding of undue hardship as provided by 11 U.S.C. § 523(a)(8), she brought an adversary proceeding in the bankruptcy court to determine whether she satisfied the standard. The bankruptcy court concluded she did not, and therefore, her loans could not be discharged. The district court affirmed. We now affirm as well.

**I**

Ms. Roe graduated from college in 1994 with a bachelor of science degree in Middle East studies. She also holds an associate's degree and has taken graduate level classes online to become a teacher. She worked part-time as an interpreter until 1995, and has since earned money by delivering newspapers and acting as a movie-extra two to five times a year. Her movie roles pay $72.50 per day and require that she work between two and twelve hours each day, although she has twice worked longer. Despite these jobs, however, Ms. Roe claims to be unable to work. Indeed, she has submitted no job applications within the past ten years and has not been employed on a full-time basis since 1986. As a single mother of two children, ages 17 and 12, Ms. Roe collects $623 in Supplemental Security Income (SSI) and $385 from Aid to Families with Dependent Children every month. She also receives $135 in food stamps each month. She once

-2-

received a lump sum of $6,000 in back SSI benefits and $10,000 as a settlement for injuries sustained in a car accident. She has never made any payments on her student loans, has exhausted her available forbearances and deferments, and has declined loan consolidation.

After hearing testimony from Ms. Roe, the bankruptcy court concluded that requiring her to repay her student loans would not impose an undue hardship. The court reasoned that under *Brunner v. New York State Higher Education Services Corp.*, 831 F.2d 395, 396 (2d Cir. 1987) (per curiam), Ms. Roe was maintaining a minimal standard of living but failed to show that her impoverished circumstances were likely to persist or that she had acted in good faith to repay her loans. Without providing any independent analysis, the district court affirmed. Ms. Roe appealed, arguing that her state of affairs is unlikely to change on account of her medical condition, and that she acted in good faith.

## II

We review the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. *Alderete v. Educ. Credit Mgmt. Corp. (In re Alderete)*, 412 F.3d 1200, 1204 (10th Cir. 2005). Under the Bankruptcy Code, government backed student loans cannot be discharged unless the loans impose an undue hardship. *See* 11 U.S.C. § 523(a)(8). To evaluate whether an undue hardship exists, we adopted the three-part test articulated in *Brunner*, which requires a debtor to show:

-3-

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1307 (10th Cir. 2004) (quoting *Brunner*, 831 F.2d at 396). If a debtor fails to show all three elements, there is no undue hardship and the loans cannot be discharged. *Id.*

Ms. Roe argues the bankruptcy court erred in finding that she failed to satisfy the second and third elements of the *Brunner* test. She claims she satisfied the second element by discussing her medical condition, which is an additional circumstance indicating that her impoverished lifestyle is likely to persist. She claims she satisfied the third element by not immediately seeking to discharge her student loans, but instead keeping them in deferment or forbearance as long as possible. We reject both contentions.

"[A] permanent medical condition will certainly contribute to the unlikelihood of a debtor earning enough money to repay her student loan debt," but such a condition is not a prerequisite to discharging the debt. *Id.* at 1311. Ms. Roe, however, relies on her medical condition to show that she will be unable to repay her debt, despite failing to produce any evidence of any diagnosed medical condition in the bankruptcy court. Indeed, she was limited to her own testimony of pain in her neck and back, numbness in her legs and feet, and

-4-

radiating pain in her arm. Although she also claimed to suffer from fear, racing heartbeats, high blood pressure, and carpal tunnel syndrome, she admitted that no doctor had ever told her she could not work. Rather, she stated that she must take a ten to fifteen-minute break every hour. Additionally, she testified that she home-schools her daughter and can sit, stand, walk, visit her father, and do just about anything else she likes. Perhaps most importantly, Ms. Roe failed to submit any evidence of a prognosis of her stated medical condition, which, at least in part, compelled the bankruptcy court to conclude that she failed to satisfy the second element of *Brunner*.

We perceive no error in the court's judgment. Ms. Roe submitted only her own testimony concerning her medical condition, without any professional diagnosis or prognosis to show how her condition or symptoms might affect her ability to work in the future. Although she insists that the Social Security Administration found her disabled, there was no evidence of this determination properly before the bankruptcy court, and the court offered no opinion on the issue. Consequently, we will not consider this issue for the first time on appeal. *See Robinson v. Tenantry (In re Robinson)*, 987 F.2d 665, 669 (10th Cir. 1993) (per curiam) ("A reviewing court may not . . . decide factual issues not addressed by the bankruptcy court."). And absent any diagnosed medical condition or prognosis indicting that her state of affairs is likely to persist, Ms. Roe fails to satisfy the second element of the *Brunner* test.

Nevertheless, even if Ms. Roe could satisfy the second element of *Brunner*, she cannot show the third element – that she acted in good faith to repay her loans. Ms. Roe argues that she exercised good faith by not immediately seeking to discharge her loans and instead exhausting her available deferments and forbearances. Although these are certainly factors to be considered in assessing good faith, the inquiry also "requires determining whether a debtor's circumstances are a result of factors beyond her reasonable control." *Polleys*, 356 F.3d at 1311 (quotation omitted). The bankruptcy court found that Ms. Roe had not acted in good faith because she had not applied for a job in over eleven years and had never made a payment on her student loans, despite having received two sizeable sums of money. We agree with this assessment.

"[T]he failure to make a payment, standing alone, does not establish a lack of good faith." *Id.* Courts should consider additional factors such as whether the debtor immediately sought to discharge her student loans or opted to consolidate or defer her loans. *Id.* at 1311-12. Courts also ought to consider whether the debtor is "actively minimizing current household living expenses and maximizing personal and professional resources." *Id.* at 1312. Additionally, courts should assess whether the debtor is "attempting to abuse the student loan system" by seeking to discharge her debt. *Id.* (quotation omitted). A debtor who "willfully contrives a hardship in order to discharge student loans should be deemed to be acting in bad faith." *In re Alderete*, 412 F.3d at 1206 (quotation omitted).

-6-

Ms. Roe claims she acted in good faith by keeping her loans in deferment or forbearance as long as possible, rather than seeking to discharge them as soon as they became due. Yet she also acted in ways that foreclose a finding of good faith. For example, she received two lump sum payments totaling $16,000 but used none of it to pay down her loans. Instead, she spent nearly $1,000 on dance lessons and approximately $4,000 on orthodontic work; she used the remainder to buy essentials, pay bills, and repay family and friends. Her choice to forgo her student-loan payments in favor of dance lessons and braces is not dispositive, but because it was a decision within her reasonable control that negatively impacted her ability to repay her loans, it suggests she did not act in good faith.

Perhaps more revealing, however, is Ms. Roe's failure to maximize her personal and professional resources. Indeed, despite having two college degrees and potentially invaluable experience as an interpreter for Iraqi refugees, Ms. Roe has not applied for a job in at least ten years and has not held a full-time job since 1986. Moreover, since 1995, she has completely failed to make any use of her education or experience, which has apparently resulted in her losing the translation skills she acquired as an interpreter. These facts demonstrate that she has not attempted to maximize (or even use) her personal and professional resources. Ms. Roe responds that her medical condition precludes her from working, but we have already held that she failed to show her medical condition prevented her from working. The argument is unavailing.

Still, Ms. Roe adds that she did not act in bad faith by refusing to consolidate her loans. She asserts the consolidation program available to her – an income-contingent repayment plan – would itself impose an undue hardship, because she would remain liable for interest accrued during the repayment period, which, after amortization, could exceed the original loan amounts. Her argument misses the point. The undue-hardship analysis evaluates whether a debtor's loan debt may be discharged, not whether a debtor should participate in a repayment plan. Because a debtor's willingness to participate in a repayment plan is "an important indicator of good faith," *id.* (quotation omitted), Ms. Roe's refusal to consolidate her loans is one more factor indicating a lack of good faith. This is especially true where she conceded she could pay the consolidated monthly payment, which could be as little as zero to five dollars. This and the other relevant factors already discussed compel us to agree with the bankruptcy court that Ms. Roe did not act in good faith to repay her loans. Consequently, she fails to satisfy the third element of the *Brunner* test and cannot show an undue hardship. Thus, her student loans are not subject to discharge.

The judgment of the bankruptcy court is AFFIRMED. Ms. Roe's motion to proceed on appeal in forma pauperis is GRANTED.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge

-8-