FILED
U.S. Bankruptcy Appellate
Panel of the Tenth Circuit

**July 23, 2020**

**Blaine F. Bates**
Clerk

<u>NOT FOR PUBLICATION</u>*

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

_____

| | |
|---|---|
| IN RE GORDON BEECHER NITKA, | BAP No. CO-20-002 |
| Debtor. | |
| _____ | |
| GORDON BEECHER NITKA, | Bankr. No. 18-16296<br>Adv. No. 18-01230-TBM<br>Chapter 7 |
| Appellant, | |
| v. | |
| DEPARTMENT OF EDUCATION, | OPINION |
| Appellee. | |

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Submitted on the briefs.**

_____

Before **CORNISH**, **HALL**, and **LOYD**, Bankruptcy Judges.

_____

**CORNISH**, Bankruptcy Judge.

---

\*      This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

\*\*      After examining the briefs and appellate record, the Court has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. Bankr. P. 8019(b). The case is therefore submitted without oral argument.

_____

The standard for declaring student loan debt dischargeable is exacting and only available to a debtor with no real prospects of earning income that supports a minimum standard of living while repaying the debt. The debtor in this appeal asks the Court to reverse the bankruptcy court's dismissal of a complaint seeking to discharge student loan debt pursuant to 11 U.S.C. § 523(a)(8).[1] The debtor contends he is unable to obtain gainful employment despite a strong employment history and his prioritization of multiple entrepreneurial pursuits. Based on these facts, we AFFIRM the Bankruptcy Court's dismissal of the debtor's complaint which sought to discharge his student loans.

## I.      Factual & Procedural Background

Gordon Beecher Nitka (the "Debtor") filed a pro se petition under chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the District of Colorado (the "Bankruptcy Court") on July 19, 2018. The Debtor scheduled no secured claims in his petition. Aside from minimal claims for unpaid state and federal income taxes, the Debtor's largest unsecured debt is a student loan in the amount of $191,081 owed to the Department of Education (the "Department"). Simultaneously, the Debtor also filed an adversary proceeding requesting a discharge of the student loan debt as an undue hardship pursuant to § 523(a)(8) (the "Complaint").

The Complaint named the Department and its loan servicer, NelNet, Inc., as defendants. The Complaint alleged the Debtor incurred student loan debt to attend law

---

[1]      All future references to "Bankruptcy Code," "Code," or "§," refer to Title 11 of the United States Code.

school between 2010 and 2013 at Phoenix School of Law. Since graduating from law school, the Complaint alleged the Debtor experienced "a series of unfortunate legal and medical events that caused dire current financial circumstances."[2] Conflicts arose in the discovery stage of the adversary proceeding as the Department probed the Debtor's alleged medical conditions. The Department conducted a deposition of the Debtor, during which he objected to questions pertaining to the unfortunate medical events that impacted his financial situation, including explaining a $200 monthly medical expense listed in discovery responses and the medications he took for his condition. To resolve the Debtor's objection, the Bankruptcy Court conducted a telephonic hearing at which it sustained the Debtor's objection to disclosing his current medications but overruled his objection to disclosure of medical events and the $200 monthly medical expenses. As additional discovery disputes arose related to the Department's requests for production and interrogatories, the Bankruptcy Court ordered the Debtor to supplement prior discovery responses.

The Debtor's supplemental discovery responses prompted the Department to file a motion to compel him to disclose additional information "regarding his alleged medical and mental health conditions as a basis for finding undue hardship or affecting his ability to obtain or retain employment" or to allow reopening of discovery (the "Discovery Motion").[3] The Department alleged the Debtor's supplemental discovery responses

---

[2]     *Debtor's Complaint to Determine Dischargeability of Student Loan* at 2, *in* Appellant's App. at 2.

[3]     *Defendant's Motion for Further Orders Regarding Incomplete Disclosures, and For Order Limiting Plaintiff's Ability to Introduce Evidence of Alleged Medical*

appeared to rely principally on alleged medical conditions as a basis for his hardship. The

Department indicated this was the first time the Debtor appeared to rely on his medical

condition to support a finding of hardship and requested additional discovery to obtain

medical records and conduct another deposition. The Bankruptcy Court held a hearing on

the Discovery Motion and the Debtor's response, at which it gave the Debtor two

options: (1) if the Debtor intended to rely on the medical or mental health conditions at

trial, the court would require him to produce additional information and discovery would

be reopened; or (2) if the Debtor did not intend to rely on the medical or mental

conditions at trial, the court would grant the motion to exclude the introduction of such

evidence at trial. After wavering, the Debtor "voluntarily admitted on the record that he

did not intend to rely on any medical and/or mental health condition(s) in support of his

case at trial."[4] Accordingly, the Bankruptcy Court granted the Department's request to

prohibit the Debtor from introducing evidence regarding his medical conditions at trial

(the "Discovery Order").[5]

The Debtor appealed the Discovery Order to this Court,[6] sought leave to appeal an

interlocutory order,[7] sought certification of a direct appeal to the United States Court of

Appeals for the Tenth Circuit Court (the "Tenth Circuit"),[8] and requested a stay pending

---

*Conditions Under Rule 37, or, in the Alternative, Leave to Reopen Limited Discovery* at
1, *in* Appellant's App. at 73.

[4]     *Minutes of Proceeding/Minute Order* at 2, *in* Appellant's App. at 103.

[5]     *Id.* at 1, *in* Appellant's App. at 102.

[6]     Appellant's App. at 108.

[7]     Appellant's App. at 110.

[8]     Appellant's App. at 185.

appeal. The Bankruptcy Court denied the Debtor's request for certification to the Tenth Circuit and stay pending appeal.[9] Shortly thereafter, this Court dismissed the appeal of the Discovery Order as interlocutory.

### *Motion for Summary Judgment*

After entry of the Discovery Order, the Department filed a motion for summary judgment, arguing there were no genuine issues of material fact (the "Motion for Summary Judgment") pursuant to Federal Rule of Civil Procedure 56, made applicable to this case by Federal Rule of Bankruptcy Procedure 7056.[10] The Motion for Summary Judgment alleged the Debtor incurred debts totaling $209,716.48 as of November 5, 2019, to attend law school in Arizona. The Debtor graduated from law school but never passed the Arizona bar exam. The Debtor worked as a contract employee at an Arizona law firm earning $25 per hour until the spring of 2018. The Debtor also sold insurance for MassMutual between 2014 and 2018.

The Debtor participated in an income-driven repayment program that reduced his monthly student loan payment based on his income beginning in June 2015. The Debtor made eleven payments on the student loan, totaling $240.02. Based on the Debtor's current income of $0, his current monthly payment is $0. Finally, the Motion for

---

[9] *Procedural Order on Plaintiff's Motion for Leave to Appeal, Request for Certification of Direct Appeal, and Motion for Stay Pending Appeal* at 4, *in* Appellant's App. at 338.

[10] *Defendant's Motion for Summary Judgment*, *in* Appellant's App. at 388. All future references to "Bankruptcy Rule(s)" are to the Federal Rules of Bankruptcy Procedure. All future references to "Civil Rule(s)" are to the Federal Rules of Civil Procedure.

Summary Judgment asserted that if the Debtor continues the income-driven repayment plan for 25 years, the remaining student loan balance will be forgiven.

The Debtor responded to the Motion for Summary Judgment and filed a motion for sanctions, alleging the Department made false statements of fact in the Motion for Summary Judgment. The Debtor argued the following statements were false: (1) that he first raised reliance on medical issues as support for finding undue hardship in his supplemental discovery responses; (2) that he was 36 years old (the Debtor was 37 at the time); (3) that he had not looked for employment since the spring of 2018; and (4) that his taxable income in 2015 was $28,856 instead of $61,901, and in 2016 was $54,643 instead of $83,000.[11]

The Bankruptcy Court compared the undisputed facts asserted by the Department with the record before it, finding "[e]very alleged undisputed fact is accurate and fully supported."[12] Accordingly, the Bankruptcy Court denied the Debtor's motion for sanctions[13] and a subsequent motion to reconsider.[14] After considering the undisputed facts, the Bankruptcy Court concluded the Debtor's complaint did not allege sufficient facts to support discharging the student loan debt pursuant to § 523(a)(8). The Bankruptcy Court, in a detailed and articulate order, granted the Motion for Summary

---

[11]     *Plaintiff's Motion for Sanctions*, *in* Appellant's App. at 417.
[12]     *Order Granting Defendant's Motion for Summary Judgment* at 7, *in* Appellant's App. at 557.
[13]     *Order Denying Plaintiff's Motion for Sanctions*, *in* Appellant's App. at 535.
[14]     *Order Denying Plaintiff's Motion to Reconsider Order Denying Plaintiff's Motion for Sanctions*, *in* Appellant's App. at 545.

Judgment on January 6, 2020,[15] and vacated the trial in the adversary proceeding (the "Summary Judgment Order").[16] The Debtor filed a timely notice of appeal of the Summary Judgment Order.[17]

*The Debtor's Educational & Employment History*

The Debtor enrolled in Colorado College in Colorado Springs, Colorado, in 2002. During his college years, the Debtor worked as a tutor in anatomy and physiology and a surgical anatomy paraprofessional. He graduated from Colorado College in May 2005, completing his courses early by attending summer sessions. Also, during college and thereafter, the Debtor worked as a bartender at the Broadmoor Resort in Colorado Springs. In 2006, the Debtor served as a "co-director of operations of the U.S.A. House in Torino, Italy," a hospitality program at the 2006 Winter Olympics.[18] The Debtor also worked as security at a nightclub in Colorado Springs and became involved in nightclub management until he decided to attend law school in 2010.[19]

The Debtor attended Phoenix School of Law in Phoenix, Arizona, graduating in May 2013. While in law school, the Debtor held several legal-related jobs in the Phoenix area. The Debtor also provided services as a fitness coach for bodybuilding clients and served as an advisor to an unsuccessful San Francisco based start-up fitness company.

---

[15] *Order Granting Defendant's Motion for Summary Judgment*, *in* Appellant's App. at 551.
[16] *Notice of Ruling and Order Vacating Trial*, *in* Appellant's App. at 550.
[17] *Notice of Appeal*, *in* Appellant's App. at 588.
[18] Summary Judgment Order at 18, *in* Appellant's App. at 568.
[19] *Id.* at 18-19, *in* Appellant's App. at 568-69.

After graduating from law school, the Debtor sat for but failed the Arizona bar exam twice. Beginning in the summer of 2013, the Debtor took a position as a law clerk at the Arizona law firm, Negretti & Associates. His responsibilities included performing legal research and writing for personal injury cases. The Debtor worked as a contract employee earning $25 per hour between the summer of 2013 and either April or May of 2018, rising to the rank of firm director.

In addition to working for the law firm, the Debtor sold commission-based insurance products for MassMutual between August 2014 and January 2018. The Debtor worked twenty to thirty hours per week selling insurance. The position required him to hold a license to sell insurance and annuities as well as other specialized financial services licenses such as the Series 6. MassMutual terminated him based on issues related to computer access and monitoring. At times, the Debtor earned income from the law firm and MassMutual that allowed him to support himself. The Debtor earned gross income of $51,901 in 2015, and $83,000 in 2016. The Debtor did not file an income tax return in 2017, and in 2018 he reported $8,381 in income.

The Debtor indicated that although he applied for numerous positions, he has been unable to find employment. Therefore, he is concentrating his efforts on two fronts: building a mobile application that allows restaurant servers to take customer payments on a mobile phone and converting an old bus into a vacation rental that he plans to park near Colorado ski resorts. The Debtor lives with his mother and pays no rent.

*Medical Circumstances*

Although the Debtor's complaint alleged that medical events impacted his financial situation, it did not elaborate on his medical conditions nor how they prevented him from working. At his deposition, the Debtor testified he suffered an injury to his right bicep, which caused "physical labor [to be] painful to do, not impossible but painful."[20] The Debtor also stated that other undisclosed medical conditions impacted his ability to work in the past but refused to provide further details.

## II.     Jurisdiction

"With the consent of the parties, this Court has jurisdiction to hear timely-filed appeals from 'final judgments, orders, and decrees' of bankruptcy courts within the Tenth Circuit."[21] Neither party elected to have this appeal heard by the United States District Court for the District of Colorado; thus, the parties have consented to our review.

"A decision is considered final if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[22] The disposition of an adversary proceeding is a final order or judgment for purposes of appellate review.[23] Additionally,

---

[20]     *Deposition* at 119, *in* Appellant's App. at 97.

[21]     *Straight v. Wyo. Dep't of Trans. (In re Straight)*, 248 B.R. 403, 409 (10th Cir. BAP 2000) (first quoting 28 U.S.C. § 158(a)(1), and then citing 28 U.S.C. § 158(b)(1), (c)(1) and Fed. R. Bankr. P. 8002).

[22]     *In re Duncan*, 294 B.R. 339, 341 (10th Cir. BAP 2003) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 712 (1996)).

[23]     *Hook v. Manzanares (In re Hook)*, 391 B.R. 211, 2008 WL 2663370, at *2 (10th Cir. BAP July 8, 2008) (first citing 28 U.S.C. § 158(a)(1) & (c)(1); Fed. R. Bankr. P. 8001–8002; 10th Cir. BAP L.R. 8001–1; and then citing *Quackenbush,* 517 U.S. at 712 (order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'")).

any prior interlocutory orders or decrees merge into a final judgment.[24] Accordingly, we have jurisdiction to hear the appeal of the order granting the Motion to Dismiss and any interlocutory orders from which the Debtor seeks appeal.

### III. Standard of Review

We review a bankruptcy court's dismissal of an adversary proceeding on summary judgment *de novo*, applying the same standard as the bankruptcy court.[25] "Whether a debtor's student loans would impose an 'undue hardship' under § 523(a)(8) is a question of law. It requires a conclusion regarding the legal effect of the bankruptcy court's findings as to the debtor's circumstances, and is therefore reviewed de novo."[26]

"*De novo* review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision."[27] "Summary judgment is appropriate only if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' when viewed in the light most favorable to the non-

---

[24] *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1104 (10th Cir. 2002) (citing *Cooper v. Am. Auto. Ins. Co.*, 978 F.2d 602, 607-09 (10th Cir. 1992) ("[A] notice of appeal which names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment.")

[25] *LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 643 (10th Cir. BAP 2014) (quoting *Rushton v. Bank of Utah (In re C.W. Mining Co.)*, 477 B.R. 176, 180 (10th Cir. 2012), *aff'd*, 749 F.3d 895 (10th Cir. 2014)).

[26] *In re Alderete*, 412 F.3d 1200, 1204 (10th Cir. 2005) (quoting *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1305 (10th Cir. 2004)).

[27] *In re Expert S. Tulsa*, 522 B.R. at 643(citing *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991)).

moving party, 'show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"[28]

The Debtor also appeals several of the Bankruptcy Court's rulings on discovery issues and a motion for sanctions. Discovery rulings and decisions on sanctions are reviewed for abuse of discretion.[29] A trial court "abuses its discretion when it (1) fails to exercise meaningful discretion . . . , (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings."[30]

## IV.    Discussion

### a. Discovery Orders

The Debtor assigns error to several of the Bankruptcy Court's orders related to discovery issues. First, the Debtor argues the Bankruptcy Court erred in requiring him to provide evidence of his medical conditions in discovery in order to introduce that evidence at trial. Next, the Debtor argues the Bankruptcy Court erroneously denied his motion to strike the affidavit of Christopher Bolander as an exhibit to the Motion for

---

[28]    *Expert S. Tulsa, LLC v. Cornerstone Creek P'ship (In re Expert S. Tulsa, LLC)*, 534 B.R. 400, 408 (10th Cir. BAP 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986)).

[29]    *Ridenour v. Kaiser-Hill Co.*, 397 F.3d 925, 938 (10th Cir. 2005) (citing *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir. 1995)) (explaining discovery orders are review for abused of discretion); *Gust v. Jones*, 162 F.35 587, 598 (10th Cir. 1998) (reviewing a motion for sanctions for abuse of discretion).

[30]    *Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015).

11

Summary Judgment. Finally, the Debtor argues the Bankruptcy Court erred in denying his request for a full transcript of the deposition the Department took of him.

### i. Discovery Related to the Debtor's Medical Condition

The Debtor argues the Bankruptcy Court erred when it determined the Department did not receive sufficient notice to take discovery of issues related to his medical condition. As such, the Debtor asserts the Bankruptcy Court abused its discretion in disposing of the Department's Discovery Motion by giving the Debtor the option of either reopening discovery regarding his medical issues or excluding all evidence of the Debtor's medical condition at trial.

We find support for the Bankruptcy Court's decision in Tenth Circuit case law. The "[o]ne clear purpose of the federal discovery rules is to facilitate fact finding and prevent unfair surprise."[31] To prevent such surprise, a trial court may order the reopening of discovery at its discretion.[32] The Tenth Circuit recognizes

> several relevant factors in reviewing decisions concerning whether
> discovery should be reopened. These include: 1) whether trial is imminent,
> 2) whether the request is opposed, 3) whether the non-moving party would
> be prejudiced, 4) whether the moving party was diligent in obtaining
> discovery within the guidelines established by the court, 5) the
> foreseeability of the need for additional discovery in light of the time
> allowed for discovery by the district court, and 6) the likelihood that the
> discovery will lead to relevant evidence.[33]

---

[31]   *Dunlap v. City of Okla. City*, 12 F. App'x 831, 834 (10th Cir. June 7, 2001) (unpublished) (citing Fed. R. Civ. P. 26)).

[32]   *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (citing *United States v. Reliance Ins. Co.*, 799 F.2d 1382, 1387 (9th Cir. 1986)).

[33]   *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1514 (10th Cir. 1990) (quoting *Smith*, 834 F.2d at 169).

Furthermore, "[a] party that without substantial justification fails to disclose information required by [Civil] Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any . . . information not so disclosed."[34] "The determination of whether a [Civil] Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the [trial] court. A [trial] court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose."[35]

First, the Bankruptcy Court disposed of the adversary proceeding on summary judgment, not at trial. Therefore, it relied on information either already discovered or provided through affidavits. The Debtor refused to disclose information regarding his medical condition when objecting to the Discovery Motion and declined to introduce evidence of his medical condition at trial.[36] If the Debtor now contends there are genuine issues of material fact related to his medical condition, he has waived that issue by not agreeing to the discovery before trial.[37]

The Debtor's arguments are not compelling. The Debtor relies on precedent from outside the Tenth Circuit to argue he cannot be compelled to provide corroborating evidence by expert testimony or documentation when it imposes an unnecessary and

---

[34]    *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 952 (10th Cir. 2002) (quoting Fed. R. Civ. P. 37(c)(1)).

[35]    *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999) (internal citations omitted).

[36]    *Transcript* at 34, *in* Appellant's App. at 379 ("I will decline to address the medical issue in the trial.").

[37]    *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011) ("If the theory is intentionally relinquished or abandoned in the [trial] court, we usually deem it waived and refuse to consider it.").

undue burden and may be established by the debtor's testimony.[38] However, contrary to the Debtor's argument, the Bankruptcy Court's order on the Discovery Motion did not require the Debtor to provide expensive expert evidence to corroborate his medical condition. The Bankruptcy Court required the Debtor to either disclose any conditions he intended to rely upon at trial to show undue hardship and allow further discovery related to those conditions or waive the introduction of evidence at trial. The Bankruptcy Court made this decision in light of the impending trial and the Department's efforts to obtain evidence of his medical condition during the discovery period. The Debtor cannot have it both ways. He alleged medical issues that precluded him from repayment of his student loans, but refused to provide the information that might excuse him from repayments. Accordingly, the Bankruptcy Court did not abuse its discretion in disposing of the Discovery Motion.

### ii. Debtor's Trial Exhibits

The Debtor argues the Bankruptcy Court abused its discretion by precluding him from introducing exhibits at trial after finding he did not serve the exhibits on the Department by the deadline set out in the pretrial scheduling order. Because the Bankruptcy Court decided the issue on summary judgment and considered the exhibits

---

[38]    Appellant's Br. 48 (first citing *Barrett v. Educ. Credit Mgmt. Corp. (In re Barrett)*, 487 F.3d 353 (6th Cir. 2007) (holding debtor did not have to present expert medical evidence to corroborate medical condition) and then citing *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320 (11th Cir. 2007) (holding expert medical evidence independent of a debtor's testimony is not necessary to establish undue hardship under § 523(a)(8))).

included in the Debtor's response to the Motion for Summary Judgment, we need not consider this argument.

### iii. The Motion to Strike

The Debtor argues the Bankruptcy Court abused its discretion by denying his motion to strike the affidavit of Christopher Bolander, one of the Department's employees, as an exhibit to the Motion for Summary Judgment. The Debtor bases his argument on a pretrial order that limited the parties to two witnesses each, only one of which could qualify as an expert witness. The Debtor argues the Bankruptcy Court erred by failing to consider Bolander as an expert witness pursuant to Federal Rule of Evidence 702.

Civil Rule 56 requires that affidavits supporting a motion for summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."[39] "'At [the] summary judgment stage, evidence need not be submitted in a form that would be admissible at trial,' but 'the content or substance of the evidence must be admissible.'"[40]

The Debtor's argument fails for several reasons. First, the Bankruptcy Court disposed of the adversary proceeding at summary judgment, meaning it took no witness testimony, and Federal Rule of Evidence 702 does not apply. Next, even if Federal Rule of Evidence 702 did apply, Mr. Bolander's affidavit states facts instead of opinions. Mr.

---

[39] Fed. R. Civ. P. 56(c)(4).

[40] *Pack v. Hickey*, 776 F. App'x 549, 554 (10th Cir. June 11, 2019) (unpublished) (quoting *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006)).

Bolander described facts as they pertain to the Debtor's student loan, including the promissory notes, the outstanding balance, the payment history and switch to alternative repayment plans, and details regarding the Department's options for repayment.[41] Mr. Bolander based his declaration on his position at the Department and his review of the Debtor's loan information and payment history. Therefore, even if the adversary had gone to trial, Mr. Bolander could appear and testify regarding the facts within his knowledge.

To the extent the Debtor argues Mr. Bolander's affidavit violated the parties' joint discovery report,[42] the argument is baseless. The limitation of experts applies to an expert a party intends to "use at *trial* to present evidence" in the form of an opinion.[43] The procedural rules on summary judgment do not limit the number of affidavits allowed, and even if affidavits were limited, the Department only included one. Accordingly, the Bankruptcy Court did not abuse its discretion in denying the Debtor's motion to strike Mr. Bolander's declaration.

### iv. The Debtor's Deposition Transcript

Finally, the Debtor argues the Bankruptcy Court erred in failing to compel the Department to provide him with a full copy of the transcript of his deposition. In the Debtor's request for a full transcript, he acknowledged the Tenth Circuit held "[t]here is no statutory requirement that the government provide a litigant proceeding in forma

---

[41] *Declaration of Christopher Bolander*, *in* Appellant's App. at 410.
[42] *Joint Report* at 2, *in* Appellant's App. at 14.
[43] Fed. R. Civ. P. 26(a)(2)(A) (emphasis added).

16

pauperis with a copy of his deposition transcript."[44] Regardless, the Debtor still sought a

copy pursuant to Civil Rule 30, which provides

> [u]nless otherwise stipulated or ordered by the court, the officer must retain
> the stenographic notes of a deposition taken stenographically or a copy of
> the recording of a deposition taken by another method. *When paid*
> *reasonable charges, the officer must furnish a copy of the transcript or*
> *recording to any party or the deponent.*[45]

Accordingly, the general rule "is that a party must obtain copies of deposition transcripts

from the court reporter upon the payment of a reasonable charge, and not from opposing

counsel or the court."[46]

The Debtor argues Civil Rule 56(d) required the Bankruptcy Court to order the

Department to provide a copy of the deposition transcript. Civil Rule 56(d) states that if a

nonmovant shows facts essential to justify opposition are unavailable to the nonmovant,

the court may issue any appropriate order. The Debtor argues that without the full

transcript, he could not adequately oppose the Motion for Summary Judgment.

First, this argument is disingenuous as the Debtor seeks a transcript of his own

deposition, and we must presume he has knowledge of his own testimony. Furthermore,

as the Bankruptcy Court concluded, the Debtor did not comply with the procedural

requirements of Civil Rule 56(d). That rule requires the party opposing summary

---

[44]    *Response to Defendant's Motion for Summary Judgment* at 13, *in* Appellant's
App. at 442 (citing *Burns v. Gray*, 106 F.3d 413, 1997 WL 26534, at *1 (10th Cir. Jan.
24, 1997) (unpublished)).
[45]    Fed. R. Civ. P. 30(f)(3) (emphasis added).
[46]    *Schroer v. United States*, 250 F.R.D. 531, 537 (D. Colo. 2008) (denying plaintiff's
request for deposition transcript in lawsuit against the Internal Revenue Service). Also
cited by Nitka. *Response to Defendant's Motion for Summary Judgment* at 13, *in*
Appellant's App. at 442.

judgment to "present an affidavit that identifies 'the probable facts not available and what steps have been taken to obtain these facts.'"[47] Such "motions [should] be robust, and . . . '[an] affidavit's lack of specificity' counsels against a finding [of] abuse [of] discretion."[48] The Debtor did not submit an affidavit in support of his Civil Rule 56(d) request to the Bankruptcy Court, and we find no evidence in the record that he adequately preserved his Civil Rule 56(d) argument first before the Bankruptcy Court. Instead, the Debtor simply "declared" that he was unable to adequately review an essential record. Therefore, the Court will not consider this argument.

The Debtor also relies on Federal Rule of Evidence 106, which allows an adverse party to require the entirety of a writing to be admitted into evidence to allege error. As the United States District Court for the District of New Mexico explained, applying Federal Rule of Evidence 106 at the summary judgment stage is improper as its application "typically arises during trial in the context of determining whether part of an exhibit may be introduced or whether all of it must be introduced."[49] We agree with the New Mexico District Court that there does not appear to be "any published case law that applies Rule 106 to the [Civil] Rule 56 summary judgment stage."[50] Accordingly, we find no error.

---

[47]     *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1206 (10th Cir. 2015) (quoting *F.D.I.C. v. Arciero*, 741 F.3d 1111, 1116 (10th Cir. 2013)).
[48]     *Id.* (quoting *Trask v. Franco*, 446 F.3d 1036, 1042 (10th Cir. 2006)).
[49]     *Castillo v. City of Albuquerque*, No. CIV 01-626, 2002 WL 35649869, at *2 n.1 (D.N.M. July 1, 2002) (unpublished).
[50]     *Id.*

Finally, the Debtor argues the Bankruptcy Court should have struck the deposition transcript from the Motion for Summary Judgment because the deposition would not be admissible as the Department failed to follow the service procedures set forth in Civil Rule 5(d)(1). Civil Rule 5(d)(1) provides "[d]epositions . . . are not automatically filed with the court" as they "must not be filed until they are used in the proceeding or the court orders filing."[51] However, Colorado Local Bankruptcy Rule 7056 states when a motion references a deposition, "a copy of the relevant *excerpt* from the document must be attached."[52] The Motion for Summary Judgment included excerpts from the deposition transcript as an exhibit pursuant to the Bankruptcy Court's local rules. Accordingly, the Bankruptcy Court did not err in failing to strike the relevant excerpts from the Debtor's deposition transcript.

### b. Denial of the Debtor's Motion for Direct Certification

The Debtor argues the Bankruptcy Court erred in denying his request to certify his appeal of the Discovery Order directly to the Tenth Circuit because the appeal involved a question of law on which there is no controlling decision by the Tenth Circuit or the Supreme Court. This Court dismissed the Debtor's appeal of the Discovery Order as interlocutory, mooting the Debtor's argument. However, even if the Bankruptcy Court erred in denying direct certification of that appeal, we agree with the Ninth Circuit Bankruptcy Appellate Panel that upon disposition of this appeal, the Debtor "now [has] a

---

[51] *Rohrbough v. Harris*, 549 F.3d 1313, 1318 (10th Cir. 2008) (quoting Fed. R. Civ. P. 5(d)(1)).
[52] Bankr. D. Colo. L.R. 7056(c) (emphasis added).

direct path of appeal to the [Tenth] Circuit without need for a Rule 8006 certification. Reversing the [B]ankruptcy [C]ourt on this point would be impractical and a waste of judicial resources."[53]

### c. The Bankruptcy Court did not err in granting the Motion for Summary Judgment

### i. Standards for Discharging a Debt Pursuant to § 523(a)(8)

Student loan debts are difficult to discharge in bankruptcy. The text of the Bankruptcy Code excepts obligations to repay a qualified educational loan from discharge "unless excepting such debt from discharge . . . would impose an undue hardship on the debtor and the debtor's dependents."[54] The Bankruptcy Code does not define the phrase "undue hardship." Accordingly, courts developed a judicial test to determine whether repaying an educational loan would result in undue hardship based on the debtor's circumstances. This test, known as the *Brunner* test,[55] requires a debtor to show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.[56]

---

[53] *In re Tomkow*, 563 B.R. 716, 731 (9th Cir. BAP 2017).

[54] 11 U.S.C. § 523(a)(8).

[55] Derived from *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987).

[56] *Roe v. Coll. Access Network (In re Roe)*, 295 F. App'x 927, 929-30 (10th Cir. Oct. 9, 2008) (unpublished) (quoting *Educ. Credit Mgmt. Corp v. Polleys (In re Polleys)*, 356 F.3d 1302, 1307 (10th Cir. 2004)).

Courts applying the *Brunner* test often "constrain[ ] the three *Brunner* requirements to deny discharge under even the most dire circumstances."[57]

Like many other courts, the Tenth Circuit adopted the *Brunner* test to determine whether government-backed student loans impose an undue hardship on a debtor.[58] The Tenth Circuit's analysis of undue hardship provides a discharge of student debt "should be based upon an inability to earn and not simply a reduced standard of living."[59] When applying the *Brunner* test, the first prong "should serve as the starting point for the undue hardship inquiry because information regarding a debtor's current financial situation generally will be concrete and readily obtainable."[60] The second prong requires "a realistic look . . . into debtor's circumstances and the debtor's ability to provide for adequate shelter, nutrition, health care, and the like;" however, the debtor need not show "a 'certainty of hopelessness.'"[61] The final prong requires "focus[ing] on questions surrounding the legitimacy of the basis for seeking a discharge" and whether the debtor "willfully contrive[d] a hardship."[62] "Good faith, however, should not be used as a means for courts to impose their own values on a debtor's life choices."[63]

---

[57] *Polleys*, 356 F.3d at 1308 (citing cases summarizing examples of dire circumstances)

[58] *Roe*, 295 F. App'x at 929.

[59] *Polleys*, 356 F.3d at 1306 (quoting *Cuenca v. Dep't of Educ.*, 64 F.3d 669, 1995 WL 499511, at *2 (10th Cir. Aug. 23, 1995) (unpublished)).

[60] *Polleys*, 356 F.3d at 1310.

[61] *Id.*

[62] *Id.*

[63] *Id.* (citing Robert F. Salvin, *Student Loans, Bankruptcy and the Fresh Start Policy: Must Debtors be Impoverished to Discharge Educational Loans?*, 71 Tul. L.Rev. 139, 197 (1996)).

The Tenth Circuit's application of the *Brunner* test provides bankruptcy courts "with the discretion to weigh all the relevant considerations" and apply the test "such that debtors who truly cannot afford to repay their loans may have their loans discharged."[64] A student loan creditor bears the burden of proving an obligation is an educational loan falling within § 523(a)(8)'s discharge exception; however, "the debtor has the burden of proving that repayment would constitute an undue hardship" pursuant to § 523(a)(8).[65]

### ii. The Bankruptcy Court's Decision

The Bankruptcy Court in a well-reasoned opinion applied the *Brunner* test to the facts, concluding: (1) the Debtor met the requirement of showing he could not maintain a minimal standard of living in addition to repaying his student loans; (2) the Debtor failed to show his current financial condition is likely to exist for a significant portion of the repayment period; and (3) although there was conflicting evidence as to the Debtor's good faith, when viewed in the light most favorable to the Debtor, the final element favored finding he acted in good faith. Reviewing the decision on summary judgment *de novo*, we consider the facts asserted and the application of the legal standard without deference to the Bankruptcy Court.

### 1. Genuine Issues of Material Fact

Summary judgment is proper upon a showing that there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law.[66] The

---

64    *Id.* at 1309.
65    *Francis, C. Amendola, et al*, 8B C.J.S. Bankr. § 1105 Burden of Proof (2020).
66    *LTF Real Estate Co. v. Expert S. Tulsa, LLC (In re Expert S. Tulsa, LLC)*, 522 B.R. 634, 643 (10th Cir. BAP 2014).

Debtor takes issue with the Bankruptcy Court's reliance on the undisputed facts. The Bankruptcy Court analyzed the undisputed facts proffered by the Department, finding the Debtor failed to follow the procedural rules to object to the Department's facts and failed to allege any additional material facts in dispute.[67] Although the Civil Rules allow a court to consider facts undisputed unless property rebutted, the Bankruptcy Court "reviewed all of the 49 proffered undisputed facts . . . and compared such facts to the record citations," concluding "[e]very alleged undisputed fact [was] accurate and fully supported in accordance with Fed. R. Civ. P. 56 and L.B.R. 7056-1."[68] Our independent review of the record confirms there is support for each undisputed fact alleged.

Although the Debtor takes issue with all of the undisputed facts, he assigns error to two specific facts in his appellate briefing. First, the Debtor argues the Bankruptcy Court incorrectly considered his total wages in 2016 as approximately $83,000 when tax records show he only earned $54,643. The Bankruptcy Court "accept[ed] that the [Debtor's] 'Taxable Social Security Earnings' were $54,643 in 2016."[69] Our review suggests that even if the Debtor's 2016 earnings were only $54,643, this was sufficient income to allow him to repay his student loan under an income-driven repayment plan.

Next, the Debtor argues the Bankruptcy Court improperly accepted the amount of his student loan payment as $0, when one statement received in June 2018 reflects a payment amount of $1,878.30.[70] Our review of the record indicates that correspondence

---

[67]   *Opinion*, at 14, *in* Appellant's App. at 605 (citing Colo. L.B.R. 7056-1(b)(3)-(4)).
[68]   *Id.*, *in* Appellant's App. at 605.
[69]   *Opinion* at 17, *in* Appellant's App. at 608.
[70]   *June 2018 Statement*, *in* Appellant's App. at 1113.

from the loan servicer instructs the Debtor to recertify his income-driven plan to have his loan placed in forbearance and brought current.[71] Furthermore, the record indicates the loans returned to forbearance status as of October 2019.[72] Accordingly, the Debtor's argument fails to account for all the evidence of the payment amount contained in the record. As such, we find no error in the Bankruptcy Court's acceptance of the payment amount.

## 2. Application of the *Brunner* Test

The Bankruptcy Court found the Department met its burden of establishing a qualified education obligation and placed the burden of satisfying the *Brunner* test on the Debtor. The Bankruptcy Court then concluded elements one and three of the test weighed in the Debtor's favor. Therefore, we focus our analysis on the second element of the *Brunner* test requiring "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans."[73] The Bankruptcy Court concluded the Debtor failed to carry his burden of showing his financial situation is not likely to improve. The Bankruptcy Court based this conclusion on facts indicating the Debtor is highly educated and possesses a variety of job experiences but has not made diligent efforts to obtain stable employment.[74]

---

[71] *Correspondence*, *in* Appellant's App. at 1115.
[72] *Exhibit B*, *in* Appellant's App. at 686.
[73] *Roe v. Coll. Access Network (In re Roe)*, 295 F. App'x 927, 929 (10th Cir. Oct. 9, 2008) (unpublished) (quoting *Educ. Credit Mgmt. Corp v. Polleys (In re Polleys)*, 356 F.3d 1302, 1307 (10th Cir. 2004)).
[74] The Debtor's appellate briefing does not assign error to the Bankruptcy Court's conclusions under the *Brunner* test, instead distinguishing the facts in his case from cases cited by the Department in its Motion for Summary Judgment. Appellant's Br. 56-59.

The Debtor's employment and income history indicates he earned enough to make at least a minimal student loan payment under an income-driven repayment plan when he was employed. Although the Debtor is no longer employed and his financial condition has changed, he failed to show that this financial condition is likely to persist for the life of the loan. Evidence in the record indicates he is pursuing entrepreneurial goals of developing a mobile payment application and converting a bus into a vacation rental. These endeavors suggest the Debtor still possesses skills and abilities that translate to a variety of jobs ranging from professional careers to general labor. This also suggests that the Debtor's current situation need not persist for the duration of the repayment period. Accordingly, the Bankruptcy Court did not err in concluding the Debtor failed to carry his burden of showing his circumstances will continue for a significant portion of the repayment period.[75]

The Debtor argues the Bankruptcy Court erred in recognizing the law as it applied to the facts in his case. First, he argues the Tenth Circuit does not require a plaintiff to show maximization of earning potential to demonstrate undue hardship. Reviewing the Bankruptcy Court's opinion, the court ultimately concluded case law addressing income

---

The Debtor's sole reference to the requirement of showing his financial state is likely to persist for the duration of the repayment period objects to facts deemed undisputed. Appellant's Br. 58. As already discussed, the Bankruptcy Court's finding of the undisputed fact is not clearly erroneous.

[75] The Debtor appears to argue the entire $209,716.48 balance of his student loan is past due and the repayment period has ended without pointing to any evidence to support this contention. However, the loan servicing records indicate the loan is in forbearance based on the filing of the bankruptcy petition. *Exhibit B*, *in* Appellant's App. at 686; *Exhibit C* at 106-07, *in* Appellant's App. at 797-98.

maximization is only persuasive and not precedential; therefore, the Bankruptcy Court did not address the Debtor's effort to maximize his income.[76] The Debtor also argues cases cited by the Department are not precedential and are distinguishable from his case. As the specific cases the Debtor references were either not cited by the Bankruptcy Court or were cited to articulate the legal standard of review and not for factual comparison, we find no merit in the Debtor's arguments.[77]

### d. Denial of the Debtor's Motion for Sanctions

Finally, the Debtor argues the Bankruptcy Court erred in denying his motion to sanction the Department for making false statements of fact in the Motion for Summary Judgment. The Debtor argued the following assertions were incorrect: (1) that he first raised reliance on medical issues as support for finding undue hardship in his supplemental discovery responses; (2) that he was 37 years old instead of 36; (3) that he was not looking for employment since the spring of 2018; and (4) that his taxable income

---

[76] Opinion at 27, *in* Appellant's App. at 577 ("[*Gesualdi v. Educ. Credit Mgmt. Corp. (In re Gseualdi)*, 505 B.R. 330, 339 (Bankr. S.D. Fla. 2013)] certainly supports the [Department]'s argument. It has some persuasive value, but it is not precedential.")

[77] The Debtor argues *Cuenca v. Dep't of Educ.*, 64 F.3d 669, 1995 WL 499511, at *2 (10th Cir. Aug. 23, 1995) (unpublished)) is factually distinguishable. The Bankruptcy Court did not cite *Cuenca* or analogize to its facts. The Debtor argues the facts of *Brown v. Sallie Mae, Inc. (In re Brown)*, 442 B.R. 776 (Bankr. D. Colo. 2010) also differ from his case. The Bankruptcy Court cited *Brown* to establish that all three elements of the *Brunner* test must be met to prove undue burden and to suggest income maximization should be considered as part of the second element, if at all. *Opinion* at 26, 27, *in* Appellant's App. at 576, 577 (citing among other cases *Brown*, 442 B.R. at 781-82). The Debtor argues the Department improperly cited cases from the bankruptcy courts for the Middle District of Pennsylvania and the Southern District of Florida. The Bankruptcy Court did not cite to a case from Pennsylvania and stated the case from the Southern District of Florida had "some persuasive value, but [was] not precedential." *Id.* at 27, *in* Appellant's App. at 577.

in 2015 was $28,856 instead of $61,901, and in 2016 was $54,643 instead of $83,000.[78] The Debtor also alleged the Department improperly listed two expert witnesses in violation of the parties' joint report.[79] The Bankruptcy Court denied the Debtor's motion for sanctions[80] and a motion to reconsider the denial.[81]

We review a ruling on a motion for sanctions for abuse of discretion.[82] The Supreme Court has held Bankruptcy Rule 9011 "authorizes the court to impose sanctions for bad-faith litigation conduct . . . . The court may also possess further sanctioning authority under either § 105(a) or its inherent powers."[83] The failure to follow the "safe harbor" procedures "[should] result in the rejection of the motion for sanctions."[84] Concluding otherwise constitutes an abuse of discretion.[85]

The Bankruptcy Court based its order denying the Debtor's motion for sanctions on Bankruptcy Rule 9011(c)(1)(A)'s "safe harbor provision," which requires a movant to serve a motion for sanctions on a party and allow the party twenty-one days to correct errors in a pleading as the basis for denying the motion. In his motion to reconsider the order denying the Motion for Sanctions, the Debtor requested the Bankruptcy Court take notice of the Department's many false assertions and award sanctions on its own motion

---

[78] *Plaintiff's Motion for Sanctions*, *in* Appellant's App. at 417.
[79] *Id.* at 8, *in* Appellant's App. at 424.
[80] *Order Denying Plaintiff's Motion for Sanctions*, *in* Appellant's App. at 535.
[81] *Order Denying Plaintiff's Motion to Reconsider Order Denying Plaintiff's Motion for Sanctions*, *in* Appellant's App. at 545.
[82] *Gust v. Jones*, 162 F.35 587, 598 (10th Cir. 1998).
[83] *Law v. Siegel*, 571 U.S. 415, 427 (2014) (internal citations omitted).
[84] *Roth v. Green*, 466 F.3d 1179, 1192 (10th Cir. 2006) (quoting 5A Charles Alan Wright & Arthur R. Miller, *Federal Prac. & Procedure* § 1337.2, at 723 (3d ed. 2004)).
[85] *Id.* at 1193.

pursuant to Bankruptcy Rule 9011(c)(1)B).[86] Bankruptcy Rule 9011(c)(1)(B) allows a

court to issue sanctions on its own initiative upon finding a violation of 9011(b). The

Bankruptcy Court reviewed the facts alleged by the Department in the Motion for

Summary Judgment and concluded "[e]very alleged undisputed fact [was] accurate and

fully supported in accordance with Fed. R. Civ. P. 56 and L.B.R. 7056-1."[87] On appeal,

the Debtor points to no evidence in the record indicating he complied with Bankruptcy

Rule 9011's "safe harbor" provision and does not identify any specific facts the

Department misrepresented in the Motion of Summary Judgment.[88] Accordingly, the

Bankruptcy Court did not abuse its discretion in denying the Debtor's motion for

sanctions.[89]

## V. Conclusion

While the Bankruptcy Code presumptively excepts student loan obligations from

discharge, the Tenth Circuit instructs bankruptcy courts to apply the *Brunner* test "such

that debtors who truly cannot afford to repay their loans may have their loans

---

[86] *Motion to Reconsider Order Denying Motion for Sanctions* at 1, n.2, *in* Appellant's App. at 539.

[87] *Opinion* at 14, *in* Appellant's App. at 605.

[88] *See* Appellant's Br. 37-38.

[89] The Debtor argues the Bankruptcy Court erred in failing to consider his motion for sanctions pursuant to Fed. R. Civ. P. 56(c)(2) and Model R. Prof. Conduct 3.3(a)(1). Civil Rule 56(c)(2) provides no authority to sanction a party. Model R. Prof. Conduct 3.3(a)(1) provides "[a] lawyer shall not knowingly make a false statement of fact or law to a tribunal." As the Bankruptcy Court found "[e]very alleged undisputed fact [was] accurate and fully supported in accordance with Fed. R. Civ. P. 56 and L.B.R. 7056-1," we find no basis for the Debtor's argument under Model R. Prof. Conduct 3.3(a)(1). *Opinion* at 14, *in* Appellant's App. at 605.

discharged."[90] In this case, the undisputed facts establish that the Debtor previously held gainful employment. Although the Debtor is currently experiencing financial difficulty, he presented no evidence to the Bankruptcy Court tending to show his financial condition is likely to persist for the duration of his repayment period as required by the second element of the *Brunner* test. Instead, the record before this Court suggests the Debtor has not really tried to find work or leave the confines of his mother's home, and would prefer to be self-employed rather than obtain gainful employment. The record before this Court supports the conclusion the Debtor "seems to have given up any serious efforts at employment."[91] Accordingly, judgment of the Bankruptcy Court is AFFIRMED.

---

[90] *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir. 2004).
[91] *Opinion* at 29, *in* Appellant's App. at 579.